JOSEPH GLAUBER et al., Plaintiffs, *v.* HERMAN PATOF, as President of WEBER & HEILBRONER EMPLOYEES' BENEVOLENT ASSOCIATION, an Unincorporated Association Consisting of More than Seven Members, et al., Defendants.

Supreme Court, Special Term, New York County, April 6, 1944.

*Jerome G. Rosenhaus* for plaintiffs.

*Seymour Stone* for defendants.

PECK, J. This is an action for reinstatement to membership in an employees' association, and for damages, because of an illegal expulsion from membership. The defendant is an unincorporated association comprising employees of Weber & Heilbroner, and having a contract with that company whereby employment with the company is dependent upon membership in the association. The plaintiffs had been members of the association and employees of Weber & Heilbroner for about three years prior to their expulsion and consequent discharge in January, 1943.

The gravamen of the action is that plaintiffs were expelled from the union by action of the grievance committee, which was vested with the power of expulsion under the by-laws without any notice of charges and without any hearing. This complaint is not denied by the defendant, and it is clear upon the record that the plaintiffs were peremptorily expelled from the union and dismissed from their employment without any notice of charges and without the semblance of a hearing.

It has been settled by a long line of decisions that, whether or not the by-laws of an association provide for it, a member is entitled to know the charges against him in an expulsion proceeding, to an opportunity to be heard and to a fair trial. (*Harmon* v. *Matthews,* 27 N. Y. S. 2d 656; *Blek* v. *Kirkman,* 148 Misc 522; *Bricklayers', P. & S. Union* v. *Bowen,* 183 N. Y. S. 855, affd. without opinion 198 App. Div. 967; *Bartone* v. *Di Pietro,* 18 N. Y. S. 2d 178; *Brooks* v. *Engar,* 259 App. Div. 333.) The proceeding need not take on the formalities of a court proceeding, but it must satisfy these elementary requirements of any judicial proceeding. The importance of such procedure is manifest where, as here, employment is dependent upon membership and the power to expel is the power to deprive men of their livelihood.

The defendant does not seriously resist the plaintiffs' claim to reinstatement, but vigorously resists their claim to damages. The plaintiff Glauber was out of work for nine weeks after his discharge, and plaintiff Zacker was out of work for eight weeks. Their weekly compensation from Weber & Heilbroner prior to their discharge had been fifty dollars a week. The defendant makes two objections to the claim for damages: (1) that an employees' association is not liable to pay the losses of an expelled member unless all the members of the association are liable, and all the members are not liable here; (2) that the plaintiffs, with the exercise of reasonable diligence, could have found other employment immediately after their discharge, and their loss is therefore not recoverable. The validity of these defenses is, of course, dependent upon the facts of the case.

There is no question but that an action may not be maintained against an association under section 13 of the General Association Law unless the evidence establishes that all the members of the association are liable, either jointly or severally, to pay the plaintiff the amount of his claim. Liability is, of course, a legal consequence. The question in each case is whether that consequence follows from the facts of the case.

The facts here are that the by-laws of the union vest the power of expulsion in a grievance committee, but provide that the general membership shall be advised of the action of committees by a reading of the reports of committees at all general meetings. These plaintiffs were expelled at a meeting of the grievance committee held on January 22, 1943. The next general meeting of the association was held on February 8, 1943. The testimony in behalf of the defendant is that neither the minutes nor report of the grievance committee were read at the

general meeting, but the minutes of the general meeting disclose that inquiry was made from the floor as to why Zacker and Glauber were discharged and the charges were not in the minutes. The only discussion of their case appearing in the minutes of the general meeting is the reply of the author of the charges that Glauber and Zacker were discharged because they had started other union activities. It appears in the minutes of a subsequent meeting of the grievance committee, held on March 5, 1943, which meeting was held at the request of the State Labor Relations Board to reconsider the case of Glauber and Zacker, that one of the members said that it was not necessary to bring the men before a meeting of the whole membership because " the members had given the grievance committee and officers a vote of confidence at the general meeting at which the expulsion of Glauber and Zacker was discussed ". This member, and others present at the general meeting of February 8th, testified that there was no such discussion or vote of confidence as that recorded in the minutes of March 5th.

Whether there was such discussion and vote of confidence is not of controlling importance in this case. The members of the association undertook by their contract of association to fix the terms of membership and to exercise the power of expulsion by delegating that power to the grievance committee, and, being mindful of the important power they had vested in the committee, provided, in order to exercise the necessary control over committees, that reports of committees should be made at each meeting of the general mmbership. It would not seem too much to require the membership in such case to assume responsibility for the actions of its duly constituted agents. Still there might be a question of general liability if the action of the grievance committee had not come to the attention of the membership. But here it is plain upon the minutes of the general meeting, not only that the membership was informed of the plaintiffs' expulsion, but also knew that the proceedings were irregular. The membership knew that the charges were not recorded in the minutes of the grievance committee and, according to whether the defendant's witnesses or minutes are to be believed, either neglected to receive the report of the grievance committee which they were in duty bound to receive, or affirmatively approved the action of the grievance committee.

Of a total membership of eighty-nine, there were forty-five members present at the general meeting of February 8th. Counsel for the defendant argued at the trial that notice to a majority of the membership was not enough, that notice must come

to the personal attention of every member, and acknowledged that in his view a membership association might always exempt itself from liability by having one member absent himself from meetings. While it is difficult to define with satisfactory preciseness the necessary quality and quantity of notice to the general membership to make an association liable, it can at least be said that the contention of the defendant is as far from being the law as it is far from reality. ■

The cases cited by the defendant are not inconsistent with the imposition of liability in this case. *McCabe* v. *Goodfellow* (133 N. Y. 89) states the general rule that an action under section 13 of the General Association Law must be predicated upon a liability of all the members of the association. On the facts of that case, involving an association described as '' transitory '' in character and as one of those '' spasmodic moral movements '', where it was clear that expenses were to be defrayed only from voluntary subscriptions, the court held that the association was not liable to one of its members, who was charged with knowledge of its scope and powers, for his engagement as an attorney by one of the committees. The court also stated what is undoubtedly the standard of judgment in these cases: '' The individual liability of the members for contracts made by the association or its officers or committees, depend upon the application of the principles of the law of agency ''.

In *Schouten* v. *Alpine* (215 N. Y. 225), the question was the liability of a national union for an expulsion from a local union, where the national was involved only through the action of its executive board in affirming on appeal an erroneous decision of the local. The court pointed out that it was not alleged that the members of the executive board acted in bad faith, and held that in the absence of bad faith on the part of the executive board the members of the association could not be held liable.

There are not sufficient facts stated in the case of *Peo. ex rel. Solomon* v. *Brotherhood of Painters* (218 N. Y. 115) to give that decision any significance.

In *Browne* v. *Hibbets* (290 N. Y. 459) the court held that the membership of an association was not liable for an improper expulsion resulting from misunderstandings and where there was a finding that the union had acted in good faith. The court said that '' In the absence of allegations and proof * * * of bad faith on the part of the membership as a whole, no recovery of damages may be obtained ''. Whether, in the light of the language of the court in *Schouten* v. *Alpine* (*supra*) this means that there must be evidence of bad faith on the part of the

members in addition to and as distinguished from bad faith on the part of duly constituted agents may be a question, but the question is not involved here.

It cannot be said in this case that the expulsion of the plaintiffs was the result of any misunderstanding, or that either the committee or membership of the association acted in good faith. There can be no good faith in exercising an inherently judicial power without any of the qualities of judiciality. The members of this association knew the very valuable right which expulsion deprived a member of, and knew that a member should not be expelled without complying in good faith with the rudiments of a judicial determination of the charges against a member. The grievance committee acted without the slightest regard to the requirements of the occasion, and the members were satisfied, with full notice of irregularity on the part of both the grievance committee and the general meeting, to accept the illegal expulsion of the plaintiffs. That is bad faith.

It would seem that in the modern union, of all places, the rights of men to their jobs should be zealously safeguarded and that members should not be deprived of a membership concomitant with employment without a scrupulous adherence to the substance of a judicial proceeding. It should not be too much to require the membership as a whole to assume the responsibility of seeing that members get a fair trial on charges on which they may be deprived of membership and employment. If the membership sees fit to delegate the power of expulsion to a committee, it should not be too much to require the membership as a whole to assume responsibility for the actions of the committee. The decision in this case need not rest on such general principles, however. It rests upon a finding that there was bad faith on the part of the membership as a whole in countenancing the expulsion of the plaintiffs upon the record which was before the general meeting on February 8, 1943.

On the amount of damages, the court finds that there was no unreasonable delay on the part of the plaintiffs in securing other employment. The defendant attaches importance to the fact that Glauber was offered a job in the Bronx in February, which he refused because he lived in Brooklyn and traveling time between his dwelling and place of business would have taken three hours a day. Similarly, the defendant contends that Zacker should have accepted an offer of employment given him in February, to work at night rather than in the daytime. It is also important to note that both plaintiffs were endeavoring during February and March to regain their positions with

Weber & Heilbroner, and that the matter of their reinstatement was before the State Labor Relations Board and the defendant association during this time. The test is that laid down by the Court of Appeals in *McClelland* v. *Climax Hosiery Mills* (252 N. Y. 347, 359), '' The servant is free to accept employment or reject it according to his uncensored pleasure. What is meant by the supposed duty is merely this, that if he unreasonably reject, he will not be heard to say that the loss of wages from then on shall be deemed the jural consequence of the earlier discharge. He has broken the chain of causation, and loss resulting to him thereafter is suffered through his own act. It is not damage that has been caused by the wrongful act of the employer.'' It cannot be said that the plaintiffs' rejection of other employment during February and March was unreasonable or that their unemployment during this period was the result of any act on their part rather than the wrongful act of the defendant association in expelling them.

Judgment will be entered requiring the reinstatement of the plaintiffs to membership in the association, and requiring the defendant association to pay to the plaintiff Glauber the sum of $450 and to the plaintiff Zacker the sum of $400.