PHILIP LUBLINER, Individually and as Treasurer of Pocketbook Workers' Union, New York, et al., Plaintiffs, *v.* SAMUEL REINLIB, Individually and as President of International Ladies' Handbag, Luggage, Belt & Novelty Workers' Union, et al., Defendants.

Supreme Court, Special Term, New York County, September 28, 1944.

*Max H. Frankle* for defendants.

*Boudin, Cohn & Glickstein* for plaintiffs.

BOTEIN, J.  These are two motions made by the defendants under rules 103 and 106 of the Rules of Civil Practice respectively, in a suit for libel.  The action is brought by the Pocket-book Workers' Union of New York and three individual plaintiffs against the International Ladies' Handbag, Luggage, Belt & Novelty Workers' Union and one Reinlib, both individuall and as president of the latter union.  Although both unions are unincorporated associations, one sues and the other is sued, not only by their officers in their representative capacities pursuant to the provisions of sections 12 and 13 of the General Associations Law but the complaint also designates each union as a party by name as though it were a separate legal entity.

The motion under rule 103 is to strike from the title of the action, as being redundant and unnecessary, the names of the unions pleaded as entities.  There is no question that the plaintiff union is properly before the court through suit under section 12 of the General Associations Law*, by its designated officer in his representative capacity.  (*Kirkman* v. *Westchester Newspaper, Inc.*, 287 N. Y. 373.)  Thus, the retention in the title of the

---

* Providing that an action may be maintained by the president or treasurer of an unincorporated association to recover any property, or upon any cause of action, for or upon which all the associates may maintain such an action, by reason of their interest or ownership therein, either jointly or in common.— [REP.

action herein of the plaintiff union's name pleaded as an entity, alongside the union name pleaded properly under section 12, is redundant and unnecessary and would lead to confusion. Accordingly, the motion to strike the name of the plaintiff union under rule 103 is granted. Disposition will be made later of that branch of the motion which seeks to strike the name of the defendant union.

The motion under rule 106 seeks to dismiss the complaint in its entirety for failure to state a cause of action. The defendants urge four grounds as the basis for this motion: (1) a union cannot be libeled as a group; (2) a suit for libel cannot be brought against a union qua union, or against its president in his representative capacity; (3) under section 16 of the General Associations Law the defendant union and the defendant Reinlib, as an individual, cannot be sued concurrently; and (4) the complaint does not state facts sufficient to constitute a cause of action in libel per se.

The first three grounds concern primarily the apposite provisions of the General Associations Law governing suits by and against unincorporated associations. These provisions are essentially procedural and were not designed to effect changes in the substantive law. (*Hagan* v. *Bricklayers' etc., Union of Syracuse,* 143 Misc. 591; *Meinhart* v. *Contresta,* 194 N. Y S. 593.) In this latter respect it has now been definitively held that a suit brought *by* a union, in the name of its president, pursuant to section 12 of the General Associations Law, may be maintained. (*Kirkman* v. *Westchester Newspapers, Inc., supra; Bradley* v. *Connors,* 169 Misc. 442.) In the *Kirkman* case the Court of Appeals made clear that the action could be maintained upon a showing of libel of the group only, and not of the members personally and individually. And even before the *Kirkman* decision, this court had indicated that such a suit was tenable. (*National Variety Artists, Inc.,* v. *Mosconi,* 169 Misc. 982, 983; but cf. *Stone* v. *Textile Examiners Employers' Assn.,* 137 App. Div. 655.) There is no need, therefore, to consider further the defendants' first point.

The action here, however, is one which is also *against* a union, and by it the plaintiffs are seeking to impose vicarious liability upon the union, and possibly its members, for the allegedly tortious acts of one of its officers. The defendant union's main contention is that the plaintiffs have not complied with the provisions of section 13 of the General Associations Law which require that: "An action * * * may be maintained, against the president or treasurer of * * * an association * * *

upon any cause of action, for or upon which the plaintiff may maintain such an action * * * against all the associates, by reason of * * * their liability therefor, either jointly or severally." It is urged that no action may be maintained against the defendant union in the absence of allegations connecting all of its members with the publication of the libels. The alleged libels are contained in a circular bearing the name of the defendant union and in a letter signed by the defendant Reinlib as its president. The writings were issued at a time when both unions were seeking to organize the employees of a named employer in the pocketbook industry. This contest was apparently but one episode in a long-standing rivalry between the two unions, which are not affiliated with the same parent organiza-tion, to recruit members from among the employees in the indus-try. Against this background it seems to me that the provi-sions of subdivision 6 of section 876-a of the Civil Practice Act provide the substantive norms to which the complaint and proof must conform.

Subdivision 6 reads: " No officer or member of any associa-tion or organization, and no association or organization partici-pating or interested in a labor dispute (as these terms are herein defined) shall be held responsible or liable in any civil action at law or suit in equity, or in any criminal prosecution, for the unlawful acts of individual officers, members, or agents, except upon proof by the weight of evidence and without the aid of any presumptions of law or fact, of (a) the doing of such acts by persons who are officers, members or agents of any such asso-ciation or organization, and (b) actual participation in, or actual authorization of, such acts, or ratification of such acts after actual knowledge thereof by such association or organization." Thus, assuming in this case that the alleged wrongful acts occurred during the course of a " labor dispute ", as defined in section 876-a, the comprehensive language of the quoted subdivi-sion would seem clearly to control an issue, as here, of vicarious liability of a union or its members flowing from such wrongful acts. However, due to a lack of litigation and interpretation of this subdivision of the Civil Practice Act, a somewhat detailed discussion of its background is required to determine adequately its applicability to the case at bar.

Section 876-a, in its entirety, was patterned after the so-called Norris-La Guardia Act (U. S. Code, tit. 29, § 101 et seq.). Sec-tion 6 of that Act (U. S. Code, tit. 29, § 106) contains language quite similar to that in subdivision 6 of section 876-a. In adopting that section of the Federal statute, the legislators

expressly intended to effect at least three major and interrelated ends: (1) to limit the financial responsibility of unions and of their members for the acts of individual members and officers (75 Cong. Rec. part 5, at pp. 4693, 4773, 4933, 4934, 5012, 5463, 5514, 72d Congress, 1st sess. [1932]) ; (2) to insure the application of the " correct " principles of agency law to the conduct of labor unions (Hearings on S. 1482, 70th Congress, 1st sess. [1928] pp. 759–763; 75 Cong. Rec., parts 4, 5, at pp. 4629, 4937, 4939, cf. pp. 4774, 4938, 5018, 5463) ; (3) to avoid imposing vicarious liability upon unions and their members for the acts of *provocateurs* or spies planted in unions (Senate Report No. 163, 72d Congress, 1st sess. [1932] p. 19).

It will be recognized that the first two of these purposes contemplated relief from the type of vicarious liability which resulted from the so-called Danbury Hatters' situation. (*Loewe* v. *Lawler,* 208 U. S. 274.) The section, therefore, limits not only the *criminal* responsibility of a union and its members for the " unlawful acts " of others, but any resultant *civil* liability as well. The scope of the language gives unions and their members the broadest kind of protection from such vicarious responsibility, a protection which extends to the commission of tortious as well as criminal acts. In this latter regard, the courts have construed the phrase " unlawful acts " to mean tortious acts as well as penal infractions. (See *Yellow Cab O. Co.* v. *Taxicab Drivers Local U. No. 889,* 35 F. Supp. 403, 411; 43 Words and Phrases, pp. 281, 283.)

Nor is the fact that subdivision 6 is part of a section in the Civil Practice Act otherwise relating to injunctions, of any significance. Its language clearly indicates that it is not restricted to questions arising from the issuance of injunctions in labor disputes. Certainly it is clear that its companion section in the Norris-La Guardia Act intended no such restriction. (*Mayo* v. *Dean,* 82 F. 2d 554; *Cinderella Theatre Co.* v. *Sign Writers' Local Union,* 6 F. Supp. 164.) It is also to be noted that in Federal noninjunction cases the provisions of section 6 of the Norris-La Guardia Act have been considered by the courts in deciding that a union does not lose rights acquired under the National Labor Relations Act because of the malfeasance of some union member or officer. (See *Republic Steel Corporation* v. *National Labor R. Bd.,* 107 F. 2d 472, 479, mod. on other grounds, 311 U. S. 7; *Berkshire Knitting Mills* v. *National Labor R. Board,* 139 F. 2d 134, 141; cf. *Labor Board* v. *I. & M. Electric Co.,* 318 U. S. 9.)

From the foregoing it is clear that if the alleged tortious acts grew out of a "labor dispute", the provisions of subdivision 6 of section 876-a would be generally applicable to any resultant suit for damages. (Cf. *Mayo* v. *Dean* 82 F. 2d 554, 556, *supra*.)

Its application to this case, therefore, requires a determination of the existence here of a "labor dispute".

Viewed in the light of the definition of that phrase as contained in paragraphs (a) and (c) of subdivision 10 of section 876-a, there can be no question that the factual situation described in the complaint, a typical rival organizational campaign, constitutes such a "labor dispute": "A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry * * * whether such dispute is * * * between one or more employees or associations of employees and one or more employees or associations of employees * * * " (§ 876-a, subd. 10, par. [a]). Of course, since the enactment of section 876-a the term has taken on an added legal connotation. The case law has tended to read in and to identify "lawful purpose" with "labor dispute", and to hold that to constitute a "labor dispute" the purpose of the contest must be to achieve a result which the court can designate as a lawful labor objective (e.g., *Opera on Tour, Inc.*, v. *Weber*, 285 N. Y. 348). But even this minimum interpretation of the broad definition of "labor dispute", as recited in the section, is sufficient to stamp the contest which inspired the allegedly libelous statements in this case as such a dispute. The case law long prior to the enactment of the section had established that rival organizational contests conducted without violence or fraud were unenjoinable because they had a lawful purpose. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260; *Nann* v. *Raimist*, 255 N. Y. 307; *Stillwell Theatres, Inc.*, v. *Kaplan*, 259 N. Y. 405.) Furthermore, reference to the documents quoted in the pleadings to ascertain the purpose of the defendant union's activities, a reference which is permissible (e. g., *American Guild of Musical Artists* v. *Petrillo*, 286 N. Y. 226, 229), discloses that the purpose of the organizational campaign was one contemplated by paragraph (c) of subdivision 10 of section 876-a.* The pleaded circulars reveal that the organizational objective was to get the employees "higher wages, vacation with pay, full protection of the job", etc.

---

* This subdivision provides in part that the term "labor dispute" includes any controversy concerning terms or conditions of employment.— [REP.

The Federal courts have meticulously considered the like definition of " labor dispute " under the companion Norris-La Guardia Act and have consistently held that a rival organizational dispute similar to the one here involved is embraced by the Federal legislation. (*Fur Workers Union, Local No. 72* v. *Fur Workers Union,* 105 F. 2d 1, affd. without opinion 308 U. S. 522; *United States* v. *Hutcheson,* 312 U. S. 219.)

Further evidence of the legislative intent in this State to consider such a rival organizational dispute as a " labor dispute " may be found in the New York State Labor Relations Act. (Labor Law, § 700 *et seq.*) That act, which has been held to be *in pari materia* with section 876-a (*Jewish Hospital of Brooklyn* v. " *John Doe* ", 252 App. Div. 581), recognizes in subdivision 3 of section 705 that competitive efforts by contending unions to organize given employees for purposes of collective bargaining constitute a " question or controversy " within its purview. Moreover, the case law in New York since the enactment of section 876-a has tended to consider such rival organizational disputes as " labor disputes " for the purpose of determining the availability of injunctive relief. (*May's Furs & Ready-to-Wear, Inc.,* v. *Bauer,* 282 N. Y. 331; *Miller* v. *Gallagher,* 176 Misc. 647; *People ex rel. Sandness* v. *Sheriff of Kings County,* 164 Misc. 355; cf. *Triboro Coach Corp.* v. *Labor Relations Board,* 286 N. Y. 314, 322.)

The decisions in *Florsheim Shoe Store Co.* v. *Shoe Salesman's Union* (288 N. Y. 188), and *American Guild of Musical Artists* v. *Petrillo* (286 N. Y. 226, *supra*) are not basically inconsistent with this tendency. The *Florsheim* case (p. 201) expressly refused to overrule *Stillwell Theatre, Inc.,* v. *Kaplan* (259 N. Y. 405, *supra*). Moreover, the factual situation in that case is clearly distinguishable from that in the usual organizing campaign. There, as the majority opinion of the court emphasized, the picketing, by a union which concededly represented but a minority of the employees, was being conducted after the majority had chosen the rival union in an election by secret ballot under the Labor Relations Act, after that union had been duly certified by the Board as the *exclusive* representative of the affected employees, and after the employer under the mandate of that act had entered into a collective agreement with the certified union (cf. *Dinny & Robbins, Inc.,* v. *Davis,* 290 N. Y. 101). Here, in contrast, it is not alleged that the plaintiff union was ever certified as the exclusive bargaining representative of the employees who were the immediate subjects of the rivalry, or that it had ever been freely chosen by a majority of those

employees. The case of *American Guild of Musical Artists* v. *Petrillo* (*supra*) must likewise be distinguished on the facts. There the defendant union, which was ultimately enjoined because of the finding by the court of an absence of any "labor dispute", made no pretense to an ability to enhance the economic conditions or status of the famous artists involved. The conceded fact was that the defendant union had recognized that these artists had no need for organization, and that it was only when the plaintiff organization acted to represent them that the defendant refused to permit its musicians to participate in any function at which they appeared. The court held, therefore, that the objective of the dispute was not a lawful labor objective, because it had no "reasonable connection with wages, hours, health, safety, the right of collective bargaining or some other condition of employment" (p. 231).

Nor do the allegations of misrepresentations and fraud by individuals in the conduct of the campaign, the ingredients herein of the libel suit, take this action outside the pale of subdivision 6 of section 876-a. Subdivision 6 contains no conditions or limitations similar to those contained in paragraph (f) of subdivision 1 and in subdivisions 5 and 10. The very design and language of the subdivision contemplate the commission of unlawful individual acts in the course of an otherwise lawful labor dispute. This is not to say, of course, that subdivision 6 is a cloak for libel.

However, the complaint here fails to specify that the defendant union actually participated in, or authorized or ratified the alleged tortious acts. It mentions only, in conclusory form, that the "defendants conspired and agreed among themselves and with others to malign and traduce the said plaintiff and its officers" and that "the defamatory matter hereinafter more specifically alleged was published by the defendants in pursuance to their said agreement." Such conclusory allegations, standing alone in an otherwise detailed complaint, and considered in the light of the provisions of subdivision 6 of section 876-a, are inadequate as a matter of law to resist a motion under rule 106.

Although subdivision 6 does not seem to require the participation, authorization, or ratification of 100% of the members of the union* (the construction urged by defendants in their interpretation of section 13 of the General Associations Law), it would seem to require a particularity of pleading and proof to

---

* See *Glauber* v. *Patof*, 183 Misc. 400.— [REP.

the effect that the union itself, by some positive action, declaration or expression, acting as an organization and representing its members, has authorized, or ratified the activity. It will also be noted that subdivision 6 recurrently employs the words " actual participation * * * authorization * * * or ratification " in conjunction with " unlawful *acts* ". I interpret this association of words to mean that not only is *actual* authorization or ratification required, i.e., by means of some express action or declaration by the union, but also that the authorization, participation or ratification must be of the particular acts complained of and not of a general line or course of conduct. This interpretation would thwart any possibility of imposing liability upon a union for any and all acts committed subsequent to *actual* authorization to strike, picket or enter into a jurisdictional dispute unless the specific, unlawful acts complained of had also been authorized or ratified. It is evident that protection beyond that of the ordinary rules governing vicarious agency liability is here required and contemplated. The seemingly studied reiteration of the words " actual " and " acts ", as above quoted, and the statutory prohibition against the plaintiffs invoking presumptions of law or fact, set a substantive standard of proof which cannot be met even prima facie by allegations from which the most that can be gleaned is that a tortious act by an officer flowed from a general course of action authorized by the union.

In the complete absence, therefore, of any such allegations in the complaint, the court is constrained to hold that the complaint must be dismissed as against the defendant union, pleaded as an entity, and as against its president, Reinlib, in his representative capacity. This ruling renders it unnecessary to consider the nature of the liability of the union or its representative under the case law interpreting section 13 of the General Associations Law. However, in view of the fact that the draftsman of the complaint evidently did not contemplate the applicability of subdivision 6 of section 876-a of the Civil Practice Act, the plaintiffs are granted leave to serve an amended complaint within twenty days after service of a copy of the order to be entered herein, with notice of entry.

Before considering further the liability of the defendant Reinlib, who published the alleged libels, it is necessary to rule on the contention of defendants that, because section 16 of the General Associations Law requires that plaintiffs must first exhaust their remedies against the unincorporated association before any action can be brought against any or all of the indi-

vidual members, the complaint is defective in naming the unincorporated association and the individual defendant concurrently. This contention cannot be sustained. Section 16 is applicable only where the sole liability of the individual defendant is his *derivative* liability. (*April* v. *Baird,* 32 App. Div. 226.) The individual defendant here is apparently being sued in his individual capacity as the signer and putative author of one of the allegedly libelous articles and the publisher of the other. Thus, any ultimate liability on his part would have to stem from proof that he, individually, was a tort-feasor, and could not derive simply from the tortious acts of the union or of any individual.

The same end result is reached by applying subdivision 6 of section 876-a. This subdivision requires proof of actual participation, authorization or ratification of the unlawful acts by the individual upon whom the plaintiff seeks to impose liability. While subdivision 6 of section 876-a is not as unambiguous as its counterpart, section 6 of the Norris-La Guardia Act, nevertheless, any construction of the subdivision which, without more, would tend to expose every member of the union to potentially unlimited individual liability once the liability of the union is established, would subvert an acknowledged aim of the statute.

The very fact that for the purposes of subdivision 6 of section 876-a a union may be regarded as a legal entity, would seem to indicate that the fiction should not be disregarded when weighing the individual liability which derives from being a member of that union. (Cf. Witmer on Trade Union Liability, 51 Yale L. J. 40.) At least, individual liability must be based, as the subdivision intends, upon proof of the individual's affirmative indorsement of the wrongdoer's act. In fact, in support of their hitherto unorthodox procedure in pleading the plaintiff union and the defendant union in their association names, as well as by their officers under sections 12 and 13 of the General Associations Law the plaintiffs have urged " that a labor union may sue and be sued in its own name, may be treated as an entity, and may have its union funds made subject to claims for damages for torts, even though some members of the union are not liable for the tort because they were not individually party to it." But to suggest that section 876-a, which liberalizes the requisite proof for the group tort liability of a union to the extent of eliminating the requirement of 100% member participation, has thereby facilitated the imposition of ultimate liability upon the individual members of the union, would be anomalous. Section 876-a cannot be construed so as

to yield the very result which the Legislature was seeking to cure.

Moreover, such a construction would not be consonant with the provisions of the above discussed section 16 of the General Associations Law, as so far construed independently of subdivision 6. Section 16 permits a subsequent action to be brought against individual members of an unincorporated association if the judgment first obtained against the association, as required by section 15 of the same law, cannot be satisfied out of association property. Such a judgment, as has been held, is not *res judicata* in a subsequent action against the association's members, it being essential that any individual liability on their part be predicated upon proof of their individual authorization of the wrongful acts which were the basis of the first judgment (*Hale* v. *Hirsch,* 205 App. Div. 308). Indeed, section 16 expressly provides that the subsequent action against the individual members must be treated " as if the first action had not been brought."

Thus, within the orbit of its applicability, subdivision 6 supplies the rule of evidence and the measure of proof required not only to sustain a cause of action against a union, as hereinbefore discussed, but also to make a case against individual members under section 16 of the General Associations Law. The allegations that Reinlib signed one writing and published the other sufficiently spell out his participation in the alleged unlawful acts under subdivision 6.

There remains for determination only the sufficiency of the allegations of the commission of a libel. The complaint sets forth the text of the allegedly libelous documents, proceeds to spell out certain innuendoes, and alleges that the publication " did have the effect of injuring the said plaintiff in its standing and reputation as a Labor Union among the employers and workers in the said industry and in the community at large, and did bring it into disgrace and disrepute." Similarly, damages are alleged to have been sustained by the various individual plaintiffs maligned in the publications. There is no need to consider the sufficiency of the allegations of special damages, since plaintiffs advance and sustain the theory that the writings are libelous per se.

Whether language is libelous per se is a question properly raised under rule 106 (Seelman on The Law of Libel and Slander in the State of New York, p. 497). This requires some evaluation of the factual context of the allegedly libelous statements. Remarks made in the course of a labor dispute have received sympathetic judicial treatment. The Supreme Court

of the United States has gone far in protecting, picketing as a form of free speech against the issuance of injunctions, even where the language used is not of the most responsible type. (*Cafeteria Union* v. *Angelos,* 320 U. S. 293.) The Court of Appeals, in at least one case strikingly similar to the one at bar, has gone as far to protect expressions uttered in the course of a labor dispute against injunctive restraint. (*Nann* v. *Raimist,* 255 N. Y. 307, 318.) Of course, the cases cited are not determinative of this action in libel, for in a suit of this nature, for damages, such remarks are not protected by the constitutional guarantee of free speech. That guarantee will not serve to preclude tort liability even when the remarks have been made in the exercise of some legitimate trade union activity. Nor does section 876-a go any further in the protection against tort liability than to limit vicarious liability. The cases can have significance only as they define a certain attitude towards the use of language in the course of economic strife engendered by strikes or organizational campaigns.

However, those attitudes do aid in resolving the apparent dilemma created by the divergent tendencies of libel and labor law. The former treats as libelous per se any untruthful, unprivileged remarks which tend to cause the injured party to " be shunned or avoided " (*Katapodis* v. *Brooklyn Spectator, Inc.,* 287 N. Y. 17). The latter recognizes that there is a certain economic desirability in allowing a union some leeway in its endeavors to cause the public to shun or avoid the object of peaceful union activity, when the activity has a lawful purpose. (*Opera on Tour, Inc.,* v. *Weber,* 285 N. Y. 348, 355.)

In this case it is not necessary to discuss any theory of relaxation of the standards of truth to which the declarant will be held when statements are made in the course of a heated labor dispute. The language employed by the defendant is libelous per se, going beyond the bounds of propriety even in the light of the special circumstances and exigencies of a labor dispute. This holds true particularly in the case at bar, where the dispute is one between rival unions acting to persuade employees of the relative merits of the two unions, and where there is a greater premium to be put upon truthful, responsible and accurately informative statements than in most strikes and picketing situations.

As to the individual defendant, Reinlib, who, as an individual tort-feasor, is charged with actual publication of the libelous matter, the complaint is sufficient and the motion to dismiss must be denied.

Settle order.