J. Irwin Shapiro, J.
The suit is for libel.
The plaintiff is an employee of the United States Postal Service, holding the position of supervisor at the Long Island City Post Office in New York City. Defendants are Frank H. McNiff, as president of Local 1241, United Federation of Postal Clerks, an unincorporated association (hereinafter called “ Local Union ”) and Frank H. McNiff (McNiff) individually.
*481 On or about March 4, 1964, defendant McNiff, as president of the “ Local Union ” wrote a letter to “ the Postmaster of Long Island City, N. Y.” and simultaneously therewith caused copies of said letter to be posted on the bulletin boards of the ladies’ and men’s recreation rooms at the post office.
The letter reads:
Mr. Henry Schreiber
Acting Postmaster
Long Island City, 1
New York
Dear Sir:
Over the past few months supervisor Peter Stefani has repeatedly violated that section of our negotiated contract which deals with supervisors doing clerical work. Mr. Stefani, despite repeated warnings from his superiors, continues to violate our contract.
Only recently I spoke to Supt. of Mails John Daly about Mr. Stefania’s contract violations. I mentioned to Mr. Daly that we no longer could tolerate Mr. Stefania’s defiant attitued [s»e] and that I would file a formal complaint with you. Mr. Daly asked me not to file a complaint with you, assuring me that he would speak to Mr. Stefania and insist that he discontinue his contract breaking practices. This discussion, I have been assured, did take place.
However, after his talk with Mr. Daly, Mr. Stefania apparently chooses to disregard his orders. This should not be tolerated.
This evening I pointed out to General foreman, Mr. Haser that supervisor Stefania was performing clerical duties and that I was going to make a formal complaint to your office.
We have put considerable time, effort and money into our negotiated contract and I feel that its terms should not be openly breached on a repeated basis by a defiant supervisor such as Mr. Stefania.
As Mr. Stefania is rumored to be the top contender for the Level 8 position at Woolsey station, I strongly suggest to you that he be eliminated from consideration for that promotion because of his defiant attitude in the above mentioned matter.
Please give my remarks your very serious consideration and thank you for your anticipated acceptance of my suggestion to eliminate Mr. Stefani as top contender for the Woolsey promotion.
Please advise.
Sincerely,
Frank McNiff
President
The plaintiff contends ‘ ‘ That the facts stated in said * * * letter were wholly false and untrue and were published by the defendants with actual malice towards the plaintiff, and at the time of such publication the defendants knew or should have known that the statements contained therein were untrue, and/or the defamatory matter was published recklessly and carelessly so as to evince a complete disregard for the rights and reputation of the plaintiff.” No actual or special damages are *482 pleaded but recovery is sought on the ground that the statements contained in the letter are libelous per se.
The defendant “ Local Union” as and for a separate and distinct defense alleges that the statements in the letter ‘ ‘ were true and published without malice ’ ’; furthermore, ‘ ‘ That defendant was permitted and in fact obligated to do so under the terms of the contract between the Postal Service and defendant acting as the Union for Postal Workers and that this was a proper and legitimate union activity ” and finally “ That * ■* * the various grievances including the matter herein complained of by plaintiff were settled and adjusted.”
The question of the liability of the u Local Union” for the acts of McNiff was not raised by defense counsel but the court raised the question itself at the end of the whole case.
In Gillette v. Allen (269 App. Div. 441) the Appellate Division, Fourth Department, discussed the distinction to be drawn between various types of unincorporated associations for the purposes of affording them recognition and treatment as a “ legal entity ” in spite of the fact that they have no existence apart from their members.
After distinguishing a joint stock association, which is regarded as a legal entity, at least for some purposes, from the “ ordinary unincorporated groups ” the court in dicta remarked (p. 446): “ Possibly, also, due to the great growth of labor unions and their recognition, both by Federal and State statutes, as separate entities for the purpose of collective bargaining, decisions in actions by or against them must be guardedly considered. It might well be that today a labor union, for the purpose of suit against it, would be treated as a separate entity, although Kirkland v. Westchester Newspapers, Inc. (287 N. Y. 373) can hardly be said to be an authority for such a holding, because there the labor union was treated as a separate entity, only to the extent necessary to permit a suit for libel to be brought by its officers in behalf of all the members.”
The common-law rule that a union is not a legal entity and therefore has no .separate existence apart from its membership (Ostrom v. Greene, 161 N. Y. 353), was made crystal clear in Martin v. Curran (303 N. Y. 276). In that case the court held that recovery cannot be had against a union for libel unless it is alleged and proved that every member of the union authorized or ratified publication of the defamatory statement, saying: “ the Legislature has limited such suits against association officers, whether for breaches of agreements or for tortious wrongs, to cases where the individual liability of every single member can be alleged and proven. Despite procedural changes, *483 substantive liability in such cases is still, as it was at common law, ‘ that of the members severally ’ [citing case] ” (p. 282).
The record in this case does not disclose that the entire membership of defendant “ Local Union ” either authorized or ratified the making and publishing of the letter. Accordingly, regardless of any other question in the case, judgment must be directed in favor of the defendant “ Local Union ”.
While it may well be true that members of the ‘1 Local Union ’ ’ were peeved at the plaintiff for “ doing clerical work-” which, as a supervisor, he was not .required to do, and that thereby the opportunity for the hiring of temporary employees or for the employment at overtime of clerical workers was lessened and that some of them complained to McNiff about it, it nevertheless -seems quite clear that McNiff has had a long-standing antipathy toward the plaintiff and that by reason thereof his efforts to redress what he alleges to be justified grievances of his members went far beyond what was done by him in other similar cases.
In no other case was there such a posting as there was here and in no case of any other supervisor was there a request, either oral or in writing, that the alleged offender not be promoted. In fact, the record fails to disclose that in the case of similar grievances any letter was ever written by McNiff.
At the time the letter in this case was written the plaintiff was being considered for promotion to the Level 8 position. In fact, his name was one of a number of men recommended by the Promotion Board to the Postmaster. The latter picked one of the others, but in his testimony before me, which I credit and accept, he stated that the defendant’s letter had nothing to do with the plaintiff not being chosen for promotion.
After the letter had been posted, the parties had a conference with an official of the post office and the plaintiff agreed to accept an apology from the defendants by way of a letter to be written by the Postmaster to McNiff stating that the charges made by McNiff in his letter were unfounded and McNiff agreed to place that letter in the same places where his letter had been posted.
The Postmaster sent him such a letter and he posted it in the men’s recreation room, but not in the ladies’ room. His explanation for that was that the Postmaster only sent him one letter. I consider the excuse wholly inadequate. He could have easily had it photostated or otherwise copied. Having started the entire chain of events by posting his letter — which concededly, and I so find — contained many misstatements of facts, there devolved upon him the duty, if he would avoid legal responsi *484 bility for Ms libel, to comply with the conditions agreed upon. This he did not do.
I hold as a matter of law that the letter was libelous per se since it held the plaintiff up to ridicule and scorn in his business or employment as a supervisor. (November v. Time, 13 N Y 2d 175; Gurtler v. Union Parts Mfg. Co., 1 N Y 2d 5.)
The only other matter that requires consideration is the defense that the defendants were obligated to write the letter under the terms of the contract between the Postal Service and the Union and that the writing of the letter was a proper and legitimate union activity. The trouble with this defense of “ qualified privilege ” is that it does not take cognizance of the public posting of the letter. The grievance machinery set up in the contract between the Postal Service and the Union may well have permitted the latter to put its grievances in the form of a letter addressed to the Postmaster looking toward action from him thereon, but that is a far cry from making such a letter public property, particularly when it reflected upon the plaintiff’s ability and temperament to perform his duties and demanded that he be denied a promotion in his chosen field of activity. The defense is therefore insufficient as a matter of law (Shapiro v. Health Ins. Plan, 7 N Y 2d 56).
I have concluded therefore that under all the circumstances portrayed by this record, the plaintiff should have judgment against the defendant McNiff.
However, everyone connected with the local post office now knows of the apology arrangement and the plaintiff suffered no actual damage. Under the circumstances, and considering the defendant’s status as a post-office employee, plaintiff is awarded $1 for compensatory damages and $749 as punitive damages (Toomey v. Farley, 2 N Y 2d 71). The Clerk is directed to enter judgment accordingly. Insofar as the direction for a judgment in favor of the Union is concerned, it is to be without costs.