DISTRICT 2, MARINE ENGINEERS BENEFICIAL ASSOCIATION (AFL-CIO) et al., Appellants, *v.* NEW YORK SHIPPING ASSOCIATION, INC., et al., Respondents, et al., Defendants.

Second Department, January 17, 1968.

140

*Schulman, Abarbanel & Kroner* (*Howard Shulman* and *Bertram Perkel* of counsel), for appellants.

*Lorenz, Finn & Giardino* (*Alfred Giardino, C. P. Lambos* and *James F. Cosgrove* of counsel), for New York Shipping Association, Inc., and others, respondents.

*Waldman & Waldman* (*Louis Waldman, Seymour M. Waldman* and *Martin Markson* of counsel), for International Longshoremen's Association, AFL-CIO, and others, respondents.

BELDOCK, P. J. The plaintiffs are (1) District 2, Marine Engineers Beneficial Association (AFL-CIO), (2) the Shoreside Supervisors Union, Dist. 2, MEBA (AFL-CIO) (hereinafter called "SSU") and (3) certain members of SSU. The individual plaintiffs sue for themselves and on behalf of all other members of SSU similarly situated. SSU is an "affiliate" of District 2, Marine Engineers Beneficial Association (AFL-CIO) and represents certain of the hiring foremen and pier superintendents ("supervisory personnel") working on the piers in Brooklyn.

The defendant International Longshoremen's Association, AFL-CIO (hereinafter called "ILA") is a labor union which represents the longshoremen and other dockside employees, other than supervisory personnel, employed in the Port of New York. Its president is Thomas W. Gleason, named as one of the defendants. The employers of the longshoremen and supervisory personnel are various domestic and foreign shipping lines and stevedoring contractors which are organized for collective bargaining purposes into the defendant New York Shipping Association, Inc. (hereinafter called "NYSA"). The chairman of NYSA, Alexander Chopin, is also named as a defendant. The remaining defendants are representatives of ILA and NYSA in the Labor Relations Committee (hereinafter called "LRC"), the grievance and arbitration tribunal created under the ILA-NYSA collective bargaining agreement.

The action is for (1) a permanent injunction against defendants' alleged conduct and conspiracy to intentionally inflict harm on the plaintiff unions and to deprive their members of their right to organize into a union of their own choosing and (2) money damages. Plaintiffs moved for an injunction *pendente lite.* All the defendants, except two of the employer defendants, cross-moved to dismiss the complaint on the ground that it failed to state a cause of action, and all the defendants other than the same two employer defendants and ILA, Gleason and Robert Conners (the latter is the ILA representative in the LRC) additionally counterclaimed for an injunction and money damages and cross-moved for an injunction *pendente lite* prohibiting plaintiffs from picketing in or near the terminals operated by the employer defendants in Kings County or any other place in the Port of New York. Special Term granted the cross motions in all respects.

The complaint sets forth two causes of action, the first by the unions and the second by the members of SSU. The material allegations in the first cause of action have been fairly summarized by Special Term and require only a brief recital. In substance, it is alleged that SSU had been chartered to organize shoreside supervisory personnel employed by steamship and stevedoring companies; that by August, 1967 it had among its members the majority of the supervisors working in Brooklyn (Kings County) who had designated SSU as their representative of collective bargaining with their employers; that about that time the defendants entered into a conspiracy to destroy SSU as a trade union and to prevent its members from exercising their right to organize into a trade union; that, in pursuance of said conspiracy, Chopin, NYSA, the employer

defendants and others agreed that they would arbitrarily refuse to have any discussions with SSU concerning their employees; and that, when said actions caused SSU to resort to a strike, Gleason, ILA and others agreed to use the membership of ILA to break the strike. It is additionally alleged that in furtherance of the conspiracy the employer defendants failed to appear at a meeting called by SSU for the purpose of exhibiting proof that it represented the majority of the Brooklyn supervisory employees; that the employer defendants rejected the offer of SSU to prove its majority status; that, when SSU struck and established picket lines at all work sites of the employer defendants, NYSA and ILA called a special meeting of LRC for the purpose of having their representatives find that the honoring of the SSU picket lines by members of ILA was a violation of the contract between NYSA and ILA; that LRC did find that the honoring of the picket lines by ILA members was a violation of the contract; and that thereafter ILA ordered its members to break the strike.

In the second cause of action it is alleged, in addition to repeating the foregoing, that the defendants entered into the conspiracy for the additional purpose and object of depriving the members of SSU of their right to organize and belong to a union of their own choosing and that the individual plaintiffs and all others similarly situated have suffered and continue to suffer irreparable damage and injury.

Supervisory personnel occupy a unique and somewhat anomalous position in the field of labor-management relations. The National Labor Relations Act (U. S. Code, tit. 29, § 151 *et seq.*) as amended by the Labor Management Relations Act of 1947 (U. S. Code, tit. 29, § 141 *et seq.*; Taft-Hartley Law) provides in subdivision (3) of section 2 that "the term ' employee ' * * * shall not include * * * any individual employed as a supervisor " (U. S. Code, tit. 29, § 152, subd. [3']). Subdivision (a) of section 14 of the amended act (U. S. Code, tit. 29, § 164, subd. [a]) provides that any individual employed in a supervisory capacity may become a member of a labor union " but no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining." Thus, under the Taft-Hartley Law, an employer is relieved of the duty to bargain with a union as the representative of supervisory personnel. As stated in *260 Madison Ave. Corp.* v. *Nelson* (284 App. Div. 254, 256), " the Taft-Hartley Law provides that a supervisory employee may become a union member, if he so

desires, but his employer may not be compelled to treat him as an employee for collective bargaining purposes regardless of any provision of national or local law."

Notwithstanding the seemingly clear expression of legislative policy and intent as enunciated in the Taft-Hartley Law, the plaintiffs urge that the defendant employers have an affirmative duty to bargain collectively with the representative of their supervisory employees and that any interference with the exercise of the latters' right to bargain collectively gives rise to a remediable cause of action. Support for this argument is predicated upon section 17 of article I of the Constitution of the State of New York which provides: " Employees shall have the rights to organize and to bargain collectively through representatives of their own choosing."

In our opinion, the plaintiffs' reliance on the provision of the Constitution hereinabove quoted is unavailing. It has been held that, while employees have the constitutional right to organize, it does not necessarily follow that all employers have the concomitant obligation to bargain collectively with them if they do organize (*Matter of Trustees of Columbia Univ.* v. *Herzog,* 269 App. Div. 24, affd. 295 N. Y. 605). " It is evident that the constitutional provision guaranteeing employees the right to organize and bargain collectively through representatives of their own choosing does not cast upon all employers a correlative obligation. The constitutional provision was shaped as a shield; the union seeks to use it as a sword " (*Quill* v. *Eisenhower,* 5 Misc 2d 431, 433).

Subdivision (a) of section 14 of the Taft-Hartley Law provides that an employer may not be compelled to treat a supervisor as an employee for the purpose of any law, *national or local,* relating to collective bargaining. To construe section 17 of article I of the Constitution of the State of New York as guaranteeing to supervisory personnel the right to compel their employers to bargain collectively with their union, as suggested by the plaintiffs, would be contrary to and in derogation of the national policy as expressed in the Federal statute which, in effect, unclassifies supervisors as " employees " under Federal and State law, statutory or constitutional, regulating the exercise of employees' collective bargaining rights. As was said in *Hanna Mining* v. *Marine Engrs.* (382 U. S. 181, 189): " the Committee reports reveal that Congress' propelling intention was to relieve employers from any compulsion under the Act and under state law to countenance or bargain with any union of supervisory employees."

Since Federal law expressly accords to employers the right to refuse to consider their supervisory personnel as employees for collective bargaining purposes, the allegations of the complaint which, in substance, merely charge the defendant employers with refusing to meet and negotiate with SSU do not form the basis of a legally enforcible cause of action. Nor does the employers' participation, through the LRC, in the grievance procedure established under the contract between NYSA and ILA constitute a basis for the relief herein sought. Clearly, these defendants had the right to invoke the grievance procedure for the purpose of protecting their interests which they believed were being prejudiced as the result of the refusal of ILA's members to cross the picket lines.

As to the remaining defendants, the gravamen of the cause of action against them is that they conspired to oppose the plaintiffs' efforts to obtain recognition as the bargaining representative of the supervisory personnel; that they directed ILA members not to support the strike; and that they participated in a grievance proceeding under the contract with NYSA to declare the refusal of its members to cross the picket lines a violation of the contract and to direct its members to cross the picket lines.

We are in accord with the views expressed by the court at Special Term that ILA's opposition to SSU's efforts to achieve recognition was in pursuance of a legitimate interest and that its conduct in so doing was legally permissible and nonactionable. There is no charge that ILA has attempted to interfere with SSU's efforts to recruit membership or has committed any acts directed against that union's members (cf. *American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226).

Disregarding, as we must, the allegations of the complaint which are clearly conclusions of law, we find no facts therein set forth which support the plaintiffs' claims for the relief which they seek and are of the opinion that the complaint was properly dismissed.

There is only left for consideration the question of whether the cross motion for an injunction *pendente lite* should have been granted. The plaintiffs maintain that they have a right to peacefully picket to make known their grievances; the defendants contend that the picketing, which sought to compel the defendant employers to recognize SSU as the bargaining agent for its members, was not for a lawful objective and, hence, enjoinable.

Section 807 of the Labor Law (formerly Civ. Prac. Act, § 876-a) does not bar injunctive relief in a case where no law-

ful labor objective is sought (*Goodwins, Inc.* v. *Hagedorn,* 303 N. Y. 300, mot. for rearg. den. 303 N. Y. 673). At bar, the establishment and maintenance of the picket lines at the piers were intended solely for the purpose of ",compelling" the defendant employers to recognize SSU as the bargaining agent for its supervisor members. In view of the fact that it is contrary to established national policy to compel employers to treat supervisors as employees for collective bargaining purposes, we find that, under such circumstances, it is an "unfair labor objective" for a union representing supervisors to attempt to achieve this result by the use of coercive economic pressure which seeks as its goal the very thing which the union is otherwise prohibited from accomplishing. Furthermore, the issuance of the injunction *pendente lite* did not constitute an infringement of the plaintiffs' right of free speech (cf. *Teamsters Union* v. *Vogt, Inc.,* 354 U. S. 284). Although peaceful picketing is recognized as an exercise of the right of free speech, it cannot be made the cover for concerted action against an employer in order to achieve an unlawful or prohibited object (cf. *Vogt, Inc.* v. *International Brotherhood of Teamsters,* 270 Wis. 315, 321a). We conclude that the issuance of the temporary injunction constituted an appropriate exercise of the court's jurisdiction.

The order should be affirmed, without costs.

RABIN, HOPKINS, BENJAMIN and MUNDER, JJ., concur.

Order of the Supreme Court, Kings County, entered November 2, 1967, affirmed, without costs.