OPINION OF THE COURT
Shanley N. Egeth, J.
This motion is made by plaintiff, International Bureau for *411 Protection and Investigation, Ltd. (IBPI) to procure an injunction pendente lite pursuant to CPLR 6301 et seq. to enjoin the defendant Public Service Employees Union Local No. 80, of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Teamsters), its president, secretary-treasurer, some unidentified members and other persons acting in concert with them from picketing, threatening to picket or congregating in the area of Rochdale Village housing development and from engaging in acts of violence, vandalism or intimidation, or in any other manner attempting to induce Rochdale Village, Inc. (Rochdale), to breach its existing contract with IBPI.
The defendants have cross-moved in this action, pursuant to CPLR 3211 (subd [a], pars 2, 7), for an order dismissing the complaint upon the grounds that this court lacks subject matter jurisdiction and that the complaint fails to state a cause of action.
DISPOSITION
As a matter of law, this court is compelled to deny the plaintiff’s motion for injunctive relief, and to grant the defendants’ motion to dismiss plaintiff’s complaint, for the reasons set forth in this opinion.
FACTUAL BACKDROP OF DISPUTE
The plaintiff herein is a private commercial security organization which contracted with Rochdale as an independent contractor to provide security guard services at its Queens, New York, housing development, pursuant to a written agreement, dated September 29, 1978. The agreement was for a one-year term commencing November 1, 1978, and was renewable for an additional one-year term unless either party gave notice to the contrary. Prior thereto, and until October 31, 1978, Rochdale had directly employed security guards who were members of the defendant Teamsters. The term of the operative collective bargaining agreement between Rochdale and the Teamsters expired on October 31, 1978. It appears that Rochdale advised Teamsters that due to extreme financial problems it decided to reduce its costs by utilizing an outside independent organization to supply its security guards rather than continuing direct employment of such personnel. IBPI alleges that from the time it commenced providing *412 security guards to Rochdale on November 1, 1978, and until the date of the submission of this motion, Teamsters, acting through its officers, members and agents, have picketed at Rochdale’s development, physically and viciously attacked IBPI employees, and engaged in other acts, including arson and vandalism, all of which were designed to compel and induce Rochdale to breach its agreement with IBPI. Teamsters and the other defendants herein deny any responsibility for or connection with the unlawful activity alleged by IBPI, and imply that the violence has been caused or initiated by IBPI employees. It appears that the strike at the Rochdale development also involves porters and maintenance personnel of Rochdale, who are members of the same bargaining unit of Teamsters as the guards are.
It seems quite clear, and it does not appear to be seriously disputed, that considerable violence has occurred at the project. Individuals have been injured and have required hospitalization, property belonging to Rochdale has been damaged, vandalized and burned, numerous incidents have transpired which have seriously impaired and jeopardized a continuation of a peaceful, comfortable and livable life-style for the approximately 25,000 residents of Rochdale’s Queens development, and created difficulties for other persons in the project area.
PRIOR LEGAL PROCEEDINGS
It is of some significance in the consideration and determination of the instant motion to note that prior to the commencement of the action at bar, Rochdale, the owner of the affected development (which separately contracted with the Teamsters and with IBPI), initiated its own action against Teamsters in Queens County, where its development is situated. The same attorney who represented Rochdale in the Queens action is representing IBPI in this action. In many respects, the complaint and the motion papers in both actions contain virtually identical allegations, complain of identical acts and activities, and in essence, directly or indirectly seek the same injunctive relief against the defendants herein. Rochdale’s pleading in the Queens action acknowledged that a labor dispute was in progress between Teamsters and itself, and sought judicial regulation of the activities at its project site. There were numerous settlement conferences during the pendency of the Queens proceeding in which Rochdale, repre *413 sented by the present counsel for IBPI, attempted to renegotiate its contract with Teamsters.
Justice Boyers in the Queens action rendered a decision on November 17, 1978, which denied injunctive relief and dismissed the Queens action based upon noncompliance with the requirements of section 807 of the Labor Law. The decision of Justice Boyers determined that since all activity complained of arose out of an acknowledged labor dispute between Rochdale and Teamsters, injunctive relief was exclusively procurable in accordance with the terms, procedures and requirements of the Labor Law as to pleadings, notices, specificity, necessary parties and prior conduct, and that Rochdale had not met those requirements. The Queens determination did not preclude Rochdale from reapplying for redress upon an appropriate showing in compliance with the Labor Law. In fact, it expressly authorized Rochdale to serve an amended pleading in conjunction with a new attempt to procure the relief sought. The order to show cause, commencing the instant proceeding by IBPI, was signed on November 22, 1978, and served on November 23, 1978.
THE CROSS MOTION
In order for this court to grant the injunctive relief sought herein it must have subject matter jurisdiction and the plaintiff must have stated a valid underlying cause of action. (Fisher v Health Ins. Plan of Greater N. Y., 67 Misc 2d 674.) In the cross motion the defendants contest the existence of both requisites. In substance, the defendants contend that: (a) there is no valid underlying cause of action inasmuch as plaintiff has in essence pleaded an action for tortious interference with or inducement for breach of its contract with Rochdale, which defendants contend is dismissable because there is no allegation of a necessary condition precedent to such a cause of action, to wit: an existing breach of the contract; and/or (b) since the conduct sought to be enjoined arises out of a lawful and existing labor dispute between Rochdale and Teamsters, the available procedures provided by the provisions of the Labor Law are exclusive and controlling, and constitute the sole avenue available to procure the injunctive relief sought herein. In advocating this position, the defendants assert that the existence of a labor dispute and the exclusivity of Labor Law remedies are independently clear, that the application presently pending in this court contains *414 the same pleading and procedural deficiencies of failure to comply with statutory requirements, which were manifested in the proceeding before Justice Boyers in Queens, and that there is such identity and privity of position between Rochdale and IBPI as to render the decision of Justice Boyers determinative in this proceeding by reason of the application of the doctrine of collateral estoppel.
Since the granting of the cross motion would be dispositive of plaintiffs right to the relief sought herein, this court will first resolve the issues raised therein.
LABOR DISPUTE? EXCLUSIVE REMEDY?
The defendants contend that this court has no jurisdiction to entertain this motion brought by IBPI because the relief sought attempts to regulate conduct following from, and undertaken in connection with picketing in the course of a labor dispute. They maintain that the procedures provided by section 807 of the Labor Law are exclusive, and where applicable, they are pre-emptive as to the right to pursue any other possible injunctive remedies.
Subdivision 1 of section 807, mandates the statute’s exclusivity of remedy in a labor dispute and subdivision 2 thereof sets forth the procedural requirements for procurement of the relief. The pertinent provisions thereof read, as follows:
"1. No court nor any judge or judges thereof shall have jurisdiction to issue any restraining order or a temporary or permanent injunction in any case involving or growing out of a labor dispute, as hereinafter defined, except after a hearing, and except after findings of all the following facts by the court or judge or judges thereof’ and
"2. Such hearings shall be held only after a verified complaint specifying in detail the time, place and the nature of the acts complained of and the names of the persons alleged to have committed the same or participated therein have been served and after due and personal notice, in such manner as the court shall direct, has been given to all known persons against whom relief is sought and also to the public officers charged with the duty to protect the complainant’s property.”
The plaintiff contends that its action is not subject to the limitations and requirements of section 807 because the defendants’ "objectives are illegal and cannot constitute a legitimate 'labor dispute’ within the meaning of Section 807 of the *415 Labor Law”. It appears that this statement is predicated upon IBPI’s inference as to the expectant impact of the picketing upon it by Teamsters against Rochdale at the development.
This conclusion by IBPI totally misconstrues the relationships between the parties, and it misses the point. Section 807 applies "in any case involving or growing out of a labor dispute as hereinafter defined” (Labor Law, § 807, subd 1).
That definition is contained in subdivision 10 of section 807, which provides:
"10. When used in this section, and for the purpose of this section:
"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft or occupation, or who are employees of one employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is between one or more employers or associations of employers and one or more employees or associations of employees; between one or more employers or associations of employers, and one or more employers or associations of employers; or between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a labor dispute’ (as hereinafter deñned) or 'persons participating or interested’ therein (as hereinafter deñned).
"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it and if he or it is engaged in the industry, trade, craft or occupation in which such dispute occurs, or is a member, officer or agent of any association of employers or employees engaged in such industry, trade, craft or occupation.
"(c) The term labor dispute’ includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee.” (Emphasis added.)
*416 It should be noted that nowhere in the statutory definition of a case involving or growing out of a labor dispute set forth above is any reference made as to whether the dispute is “lawful”. By reason thereof, it is necessary to clarify the distinction between conduct which initially and in totality is unlawful because of the nonexistence of any labor dispute which might justify picketing and other acts of economic pressure, or specific acts and conduct which even though they occur and manifest themselves during a proper and lawful labor dispute, are illegal and improper so as to require restraint, abatement or regulation. Section 807 (subd 1, par [a]) of the Labor Law specifically requires a hearing and findings as a prerequisite to the granting of an injunction that "unlawful acts have * * * been threatened or committed” and that such acts will occur or continue. This section relates to conduct to be regulated which occurs during the course of an existing labor dispute. But the existence of such improper conduct during the course of a labor dispute does not ab initio transpose a lawful labor dispute into an unlawful one. Such acts in the latter category, occurring during a labor dispute, are specifically made the subject of judicial intervention and regulation by the Labor Law.
This point was directly determined in Robeson Appliances, Div. of Vanwyck Int. v International Assn. of Machinists & Aerospace Workers, Dist. Lodge No. 182 (89 Misc 2d 819) in which the court rejected the argument made by the employer that the violence and unlawful action complained of precluded the existence of a labor dispute which was subject to section 807. The court held (p 822) that "even extreme violence will not make inapplicable the provisions and requirements of what is now section 807 of the Labor Law.” In so doing, the court followed a similar holding of the Court of Appeals in a case decided under the then applicable section 876-a of the Civil Practice Act, which was the predecessor of the present section 807 of the Labor Law (May’s Furs & Ready-to-Wear v Bauer, 282 NY 331, 337). These cases make it clear that the very intent of the statute is to provide a means of regulating or enjoining violent and unlawful activities during the course of a lawful labor dispute.
Since violence during an existing labor dispute will not vitiate the continued existence of the dispute, IBPI must establish either that the picketing at the development is unlawful because no labor dispute exists between Rochdale *417 and Teamsters or, if such labor dispute does exist, that IBPI is not barred from the relief it seeks in this action because no labor dispute exists between Teamsters and it.
The essence of IBPI’s complaint herein is that the picketing by Teamsters or the other defendants is designed to illegally and improperly induce or coerce Rochdale to terminate or breach its contract with IBPI. It must be noted that the picketing is directed at Rochdale. The mere fact that IBPI has entered into a subsequent contract with Rochdale does not create a contractual relationship between IBPI and Teamsters or the other defendants. Nor does the existence of a contract between IBPI and Rochdale create any rights or remedies for IBPI against the Teamsters and the other defendants. By contracting with third parties, Rochdale cannot impose new obligations upon Teamsters to refrain from performing any activity which it is legally entitled to undertake.
The test as to whether Teamsters is engaged in a lawful strike at Rochdale’s development must be measured solely by the relationship between Rochdale and Teamsters; incidental effect upon IBPI, with whom Teamsters has no relationship, is irrelevant. The mere fact that IBPI has no employer-employee relationship with Teamsters is neither determinative nor relevant to the resolution of the question as to whether Teamsters’ picketing is pursuant to a labor dispute. IBPI’s rights as to this issue are wholly dependent and derivative of Rochdale’s rights and status. If Teamsters is properly engaged in activity to advance the legitimate interests, or self-interest of its members, and has been lawfully motivated to place pickets at the Rochdale development to express its position in a labor dispute with Rochdale, the fact or prospect that such activity may influence, induce, or even coerce Rochdale to breach its contract with IBPI does not empower IBPI to procure judicial restraint against continuation of Teamsters’ lawful strike activity (Stillwell Theatre v Kaplan, 259 NY 405; Reinforce, Inc. v Birney, 308 NY 164).
It seems quite clear to this court that between Teamsters and Rochdale there is an ongoing labor dispute out of which this case grows. That dispute has resulted in negotiations following the expiration of an existing union contract, and it relates to "terms and conditions of employment”, "employment relations”, and "respective interests of employer and employee”, "regardless of whether or not the disputants stand *418 in the relation of employer and employee” (see Labor Law, § 807, subd 10, pars [a], [c]).
Plaintiff contends that there is no labor dispute between Teamsters and Rochdale because their pre-existing employer-employee relationship terminated at the expiration of the term of their union contract. IBPI asserts that the absence of a contract renewal between Rochdale and Teamsters bars the applicability of the exclusive remedies and procedures contained in section 807. This position is not legally sound. Picketing by former employees to publicize the refusal of the employer to rehire them has been held to constitute a labor dispute within the meaning and scope of section 807 of the Labor Law (Thann Enterprises v New York Hotel & Motel Trades Council, 56 AD2d 879; see, also, Nash v Mennan, 279 App Div 609, affd 303 NY 956 [where the dispute involved a defendant union whose members were not in an employer-employee relationship with any of the disputants]; Potdevin Mach. Co. v Cicala, 115 NYS2d 108 [where a labor dispute was found to exist in a strike by discharged employees whose collective bargaining agreement had terminated]).
On this issue, the plaintiff asserts that section 9 (subd [b], par [3]) of the National Labor Relations Act (US Code, tit 29, § 159, subd [b], par [3]) expresses a clear Federal policy against representation of security guards by a union which also admits other types of employees in the same bargaining unit. This statute prohibits the National Labor Relations Board (NLRB) from granting certification to an offending union as representatives of the employees in such a guard bargaining unit. It is claimed that since Teamsters has combined security guards with other types of employees as members the same bargaining unit (which has been the case for 12 years), Teamsters violates this national policy. Thus, Teamsters cannot be certified for representation by the NLRB and by reason thereof, the picketing at Rochdale is not in pursuance of a legitimate labor objective or activity during a legitimate labor dispute. In support of this contention, the plaintiff cites and relies upon the case of District 2, Mar. Engrs. Beneñcial Assn. (AFL-CIO) v New York Shipping Assn. (29 AD2d 139). The Appellate Division there concluded that the picketing under such circumstances was not over a legitimate "labor dispute” and thus that the right to injunctive relief was not limited by the provisions of section 807 of the Labor Law. This decision was appealed to the Court of Appeals, which modified the *419 determination of the Appellate Division on the very point here at issue. The Court of Appeals differed with the Appellate Division, and set aside the injunction in the following language: "The purpose of the picketing in question was not 'unlawful’, and section 807 of the Labor Law prevents issuance of an injunction.” (District 2, Mar. Engrs. Beneñcial Assn. [AFL-CIO] v New York Shipping Assn., 22 NY2d 809, 812, cert den 393 US 960.)
Upon the basis of the undisputed facts disclosed to this court in the papers and briefs before it (including the pleadings and documents prepared by plaintiff’s present attorney in Rochdale’s prior application for judicial relief), this court holds (independent of the determination made by Justice Boyers in Queens County) that this case grows out of a labor dispute which is subject to the exclusive provisions contained in section 807 of the Labor Law.
Defendants contend that this application must be dismissed because the complaint and affidavits before this court fail to meet the statutory requirements of section 807 (concerning specificity, notice and verification of pleading) which are a prerequisite to the right to procure the hearing mandated by the statute before an injunction can issue in a labor dispute case. This is essentially the same argument made by the defendants in the Rochdale proceeding in Queens. Justice Boyers held that the failure to meet the necessary procedural requirements of the Labor Law compelled a denial of injunctive relief. If IBPI, as plaintiff, had standing to seek relief in this forum pursuant to the provisions of section 807, this court would rule in the same manner.
IBPI LACKS STANDING
This court, however, has serious reservations as to whether IBPI has any legal standing to invoke the provisions of section 807 against these defendants. Independent research by this court has not uncovered a case in point. It seems clear that this statute is designed to provide a procedure and remedy to deal with the conflicting needs and activities of parties who are engaged in a labor controversy or dispute. IBPI is not involved in a labor dispute with Teamsters. Its status under its contract with Rochdale did not unilaterally result in IBPI being vested with a contractual or other relationship with Teamsters. Although its rights may be vicariously affected by the relationship between Rochdale and *420 Teamsters, IBPI has no direct relationship of its own. Therefore, IBPI may be limited to request or to seek to compel Rochdale to exercise its own statutory remedies or procedures against Teamsters. It would appear to this court that the remedies exercisable under this Labor Law provision are available only to an employer in contractual or contentious privity with a union during a labor dispute. Since the plaintiffs, IBPI, is not in this category, it has no capacity, by verified petition or otherwise, to properly avail itself of the remedies contained in section 807 of the Labor Law. It must look to Rochdale or elsewhere for its remedy. Rochdale may not, by contracting widely with third parties, clone into existence innumerable new entities possessing capacity to exercise its statutory rights against Teamsters.
PLAINTIFF MUST BE DENIED INJUNCTIVE RELIEF
By reason of the determination of this court that the picketing by the defendants and the other acts sought to be enjoined herein grow out of a labor dispute between Rochdale and Teamsters, section 807 of the Labor Law becomes controlling and pre-emptive of the rights and procedure to procure injunctive relief. Such relief is only available in a labor dispute to parties possessing status under the statute who comply with the procedures prescribed therein. This court does not possess inherent power to grant injunctive relief. All such power is derived from a statutory grant of authority. The right to so act in a labor dispute is created by section 807 of the Labor Law and the exercise thereof is exclusively governed by its provisions. No other available theory of law empowers this court to grant the plaintiff injunctive relief in this case. This plaintiff’s lack of standing to utilize the remedies and procedures of section 807, and its failure to comply with the statutory requirements, if standing existed, clearly compels a denial of its application for injunctive relief.
TORTIOUS INTERFERENCE
The complaint in this action purports to seek relief and recompense for unlawful interference with the business of the plaintiff and its customer Rochdale to cause Rochdale to breach its contract with the plaintiff. All of the parties before this court have characterized this action as one for tortious interference with contract. In fact, no other cognizable cause *421 of action has been claimed to exist by plaintiff. Nor has any other cause of action been presented by the plaintiff.
Defendant has moved to dismiss the complaint contending that it fails to state a cause of action. This motion must be granted.
The essential elements of a cause of action for tortious interference with a contract were explicitly set forth by the Court of Appeals in the landmark case of Israel v Wood Dolson Co. (1 NY2d 116): (1) the existence of a valid contract between plaintiff and another party, (2) the defendant’s knowledge of the existence of the contract, (3) the defendant’s intentional procurement of the breach of that contract, and (4) damages. That court expressly stated (p 120) that "An essential element of the case against Gross is the breach of the contract by Wood Dolson. Israel’s second cause of action must fail if there is no such breach.”
This requirement was recently reiterated by the Court of Appeals in its 1977 decision in Inselman & Co. v FNB Fin. Co. (41 NY2d 1078, 1080) where the court stated: "In order for the plaintiff to have a cause of action for tortious interference with contract, it is axiomatic that there must be a breach of that contract by the other party”.
In this action there has been no breach by Rochdale of its contract with IBPI. Therefore, the cause of action for tortious interference with that contract has not yet come into existence. It will not accrue unless and until Rochdale breaches its contract with IBPI.
It should be additionally noted that this court has already held that the picketing by Teamsters and the defendants at the Rochdale site was commenced to protect a legitimate interest of union members. This lawful motive negates the existence of malice which is also required to maintain this type of cause of action (Reinforce, Inc. v Birney, 308 NY 164, supra; Stillwell Theatre v Kaplan, 259 NY 405, supra).
CROSS MOTION GRANTED
For the reasons set forth herein the defendants’ motion to dismiss plaintiff’s action for tortious contract interference must be granted. Judgment of dismissal may be entered.
[Portions of opinion omitted for purposes of publication.]