**R.M. PERLMAN INC. d/b/a Rebecca Moses Collection, and Rebecca Moses, Plaintiffs,**

v.

**NEW YORK COAT, SUIT, DRESSES, RAINWEAR & ALLIED WORKERS' UNION LOCAL 89–22–1, I.L.G.W.U.; Samuel Byer, as General Manager of New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local 89–22–1, I.L.G.W.U.; the International Ladies Garment Workers' Union; and Jay Mazur, as President of the International Ladies Garment Workers' Union, Defendants.**

No. 91 Civ. 4828 (RLC).

United States District Court, S.D. New York.

March 27, 1992.

128

Kelley, Drye & Warren, New York City for plaintiffs (Joel E. Cohen, Barbara E. Hoey, and Patrick Della Valle, of counsel).

Lewis, Greenwald, Kennedy, Lewis, Clifton & Schwartz, New York City, for defendants Local 89–22–1 and Byer (Thomas M. Kennedy and Ira Cure, of counsel).

Max Zimny, New York City, for defendants I.L.G.W.U. and Mazur (Brent Garren, of counsel).

## OPINION

ROBERT L. CARTER, District Judge.

This suit arises out of picketing by the defendant unions at the offices of plaintiff R.M. Perlman, d/b/a Rebecca Moses Collection ("RMC"), a garment industry concern, and at various other locations where RMC was doing business directly or through its contractors. The objective of this picketing, conducted between September 15, 1990 and March 28, 1991, was to compel RMC to enter into a jobber's agreement, commonly referred to as a "Hazantown Agreement," with the unions.[1] RMC

---

1. A Hazantown Agreement is a commitment by a jobber, such as RMC, to "contract out" produc-

alleges that some violence accompanied the picketing, and that it has suffered substantial losses as a result of the picketing and the violence.

RMC filed a now amended complaint against the New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union, Local 89–22–1 ("Local 89–22–1"), the International Ladies Garment Workers' Union (the "International"), and two individuals in their representative capacities as officers of the unions. In the first count of the amended complaint RMC alleges that certain of the provisions in the Hazantown agreement the local union was pressing on RMC violate section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e). In the succeeding six counts the amended complaint sets forth claims against all the defendants based on state law causes of action, specifically prima facie tort, several counts of intentional interference with contractual relations, and defamation. By the present motion defendants seek to dismiss all of the state law causes of action, counts two through seven of the amended complaint, on several theories. They also seek to dismiss Byer and Mazur as defendants and to dismiss Moses as a plaintiff.

### I.  *Federal Preemption of State Causes of Action*

■ Defendants first contend that plaintiffs' state law causes of action are all preempted by federal labor laws and must therefore be dismissed. Commencing in 1935, the federal government enacted a series of laws regulating labor-management disputes and assuring workers and employers of certain rights. In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court set forth a test for determining whether these federal laws preempt state laws that are potentially applicable to various labor disputes. "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an

unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." 359 U.S. at 244. Here, the union's picketing for a Hazantown agreement is an act either arguably protected by section 7 or prohibited by section 8 of the National Labor Relations Act, and therefore *Garmon's* presumption of preemption applies.

■ The *Garmon* Court noted, however, that this presumption of preemption does not apply where the case either (1) touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act," or (2) involves conduct that would only peripherally implicate the concerns that underlie the federal labor laws. *Garmon, supra,* 359 U.S. at 243–44, 79 S.Ct. at 778–79. As this court has observed, "[t]he paradigmatic example of a case wherein the challenged conduct touches concerns deeply rooted in local feeling and responsibility is an action to enjoin or to recover compensation for violent or threatened violent picketing." *Palm Beach Co. v. Journeymen's and Prod. Allied Services of Am. and Canada Int'l Union,* 519 F.Supp. 705, 713 (S.D.N.Y. 1981) (Ward, J.); *see also Wolf Street Supermarkets, Inc. v. McPartland,* 108 A.D.2d 25, 487 N.Y.S.2d 442, 447 (4th Dept. 1985). Thus federal law does not preempt state causes of action that seek to recover for damages resulting from violent picketing. Plaintiffs note that, in each of the contested counts of the amended complaint, they have alleged that damages resulted from violent picketing or violent conduct. Plaintiffs argue that these allegations of violence are sufficient to bring the state law causes of action into the exception to federal preemption outlined in *Garmon.*

Defendants counter this argument by examining the wording of the amended complaint more closely. They argue that the amended complaint seeks to recover for damages to plaintiffs' business stemming not only from violent incidents on the pick-

---

tion of its garments only to shops approved or represented by the union. *See Danielson v.*

*Joint Bd. of Coat, Suit, & Allied Garment Workers' Union,* 494 F.2d 1230 (2d Cir.1974).

et line, but also from peaceful picketing. Defendants correctly point out that state law may provide compensation for "the direct consequences of [violent] conduct," but that it may not award plaintiffs damages "resulting from peaceful picketing or other union activity." *United Mine Workers v. Gibbs*, 383 U.S. 715, 729, 86 S.Ct. 1130, 1140, 16 L.Ed.2d 218 (1966). Indeed, constitutional protection of peaceful union activities requires plaintiffs to meet a rather strict standard in order to recover for damages resulting from picketing where violence is alleged to have occurred. "Where the consequences of peaceful and violent conduct are separable ... recovery may be had only for the latter." *Gibbs, supra*, 383 U.S. at 732, 86 S.Ct. at 1142. If plaintiff cannot separate the consequences of peaceful versus violent conduct, recovery may only be had if the violent conduct was so pervasive that the proof "might support the conclusion that *all* damages resulting from the picketing were proximately caused by its violent component or by the fear which that violence engendered." *Id.* (emphasis in original); *see also Wolf Street Supermarkets, supra*, 487 N.Y.S.2d at 447.

From these propositions, defendants argue that in order to state a non-preempted claim for damages under state law, plaintiffs must either allege that violence dominated the picketing so as to render all damages resulting from the pickets a fruit of violence, or that plaintiffs must confine their requests for damages to those arising solely from violent conduct. Defendants point out that the amended complaint does not allege that violence dominated the picketing and that the amended complaint oversteps its bounds in counts two through seven, seeking recovery for damages resulting from peaceful as well as violent picketing. This overreaching by the amended complaint, in defendants' view, preempts the state causes of action.

Defendants cite one case of this court in support of this argument. *Billy Jack For Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union*, 511 F.Supp. 1180, 1183 n. 3 (S.D.N.Y.1981) (Ward, J.). In *Billy Jack* the court noted

that, while the complaint in that case mentioned acts of violence on the picket line, it sought an injunction against all picketing, not just against violent picketing. Given this broad focus of the complaint, the allegations of violence were deemed insufficient to prevent the state law causes of action in the complaint from being preempted by federal labor laws. Defendants seek to apply the same rationale here.

However, the rule announced in *Billy Jack* appears to be irrelevant to the matters to be determined in this case. The amended complaint does not so clearly seek compensation for damages resulting from peaceful as well as violent conduct to bring it within the *Billy Jack* rule. The passages of the amended complaint cited by defendants as overreaching proper bounds are largely ambiguous as to the source of the damages claimed. These counts could surely have been pled more carefully, but the Federal Rules of Civil Procedure require that pleadings be construed liberally, and demand only that defendants be given "fair notice of what plaintiff's claim is and the ground upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). With this standard in mind, the court cannot state that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim" which would cast the state law claims in a properly restricted, non-preempted light. *Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 80 (2d Cir.1985). Accordingly, the state law causes of action, as pleaded, are not preempted by the federal labor laws. Plaintiffs are reminded, however, of the strict burden of proof on the issue of damages that they will face at trial.

II. *Failure to Plead Authorization or Ratification of Every Union Member*

■ Defendants next contend that the amended complaint's state law causes of action must be dismissed for failure to plead the authorization or ratification of the allegedly violent acts by "every single

member" of the defendant unions. This requirement is based on the decision of the New York Court of Appeals in *Martin v. Curran*, 303 N.Y. 276, 101 N.E.2d 683 (1951). Plaintiffs concede that the complaint does not meet this standard.

*Martin* involved a libel suit against the officers of the National Maritime Union of America in their representative capacity. The Court of Appeals upheld the dismissal of the complaint in the action for failure to allege the individual liability of all union members for the libel, either through ratification or authorization of the act. Plaintiffs in the suit sought to rely upon section 13 of the General Associations Law, which governs unincorporated associations such as unions. N.Y.Gen. Ass'ns Law § 13 (McKinney 1942 & Supp.1992). That section provides that an action may be maintained against an unincorporated association by naming its president or treasurer as defendant. However, in *Martin* the Court of Appeals noted that the

> privilege [of naming only officers and not the entire membership of the association] was conferred by the Legislature on plaintiffs for their 'convenience,' and created no substantive liability. The liability to be enforced in any such suit, in which association officers are named as representative defendants, is still that of the individual members as individuals, and so the cause of action has to be one 'for or upon which the plaintiffs may maintain such as action * * * against all the associates, by reason of their * * * liability therefor, either jointly or severally.' (General Associations Law, § 13).

303 N.Y. at 281, 101 N.E.2d 683 (citations omitted). The Court continued:

> So, for better or worse, wisely or otherwise, the Legislature has limited such suits against association officers, whether for breaches of agreements or for tortious wrongs, to cases where the individual liability of every single member can be alleged and proven. Despite procedural changes, substantive liability in such cases is still, as it was at common law, 'that of the members severally.'

*Id.* at 282, 101 N.E.2d 683 (citation omitted).

Some historical background explains the basis of this rule. The common law considered a labor union an unincorporated association with no legal existence independent of its individual members. Therefore, in order to hold an unincorporated association liable, each of its members had to be made a party to the suit. This rule is designed to protect the members of the unincorporated association from unwitting liability for the acts of other members. This reasoning lies at the heart of the *Martin* decision, where the court determined that unions still lack any legal identity independent of their individual members for liability purposes. 303 N.Y. at 280, 101 N.E.2d 683.

Plaintiffs argue that this rationale is outdated, given the large size of most labor unions now, and that the *Martin* rule is unsound social policy, in that it effectively insulates unions from liability for damages for the tortious acts of its members. However, the decision in *Martin* reveals that these very policy arguments were made to that court, to no avail. The Court of Appeals remarked only that

> this court does not revise statutes ... to bring the law into accord with modern fact. Whatever reasons be pressed on us for such changes, the power to change is not ours. It is for the Legislature to decide whether or not to overhaul these settled rules, after hearing both sides, and after considering the interests of the general public as well as those of the innumerable members of these associations.

*Id.* at 282, 101 N.E.2d 683. Thus New York's highest court stated in a strongly worded opinion its express intention not to alter New York's liability rules for unincorporated associations.

Plaintiffs argue in several ways that *Martin* is no longer the law of New York. First, they point to *Madden v. Atkins*, 4 N.Y.2d 283, 174 N.Y.S.2d 633, 151 N.E.2d 73 (1958) to show that exceptions have been carved out of the *Martin* rule. In *Madden* a union member sued his union for wrong-

ful expulsion. The New York Court of Appeals created an exception to the *Martin* rule for suits by union members, relieving them of the necessity of alleging the authorization or ratification of every union member in the expulsion decision. However, as the Second Circuit has observed, *Madden* did not "severely restrict[ ]" *Martin;* "it simply held that decision inapplicable to a suit by a union member against a union for damages, arising from a wrongful expulsion." *Morrissey v. National Maritime Union,* 544 F.2d 19, 33 (2d Cir.1976). This exception to *Martin* cannot benefit plaintiffs since they are not union members, and the fact that one exception exists does not demonstrate *Martin's* inapplicability to actions for strike-related damages.

Plaintiffs next argue that *Martin* has been effectively abandoned by the New York courts. To the contrary, *Martin* has been followed and applied by the New York courts in a variety of contexts since the rule was announced in 1951 up to the present. *See, e.g., Heleniak v. Blue Ridge Ins. Co.,* 162 A.D.2d 1041, 557 N.Y.S.2d 229 (4th Dept.1990) (suit against a social club); *Mounteer v. Bayly,* 86 A.D.2d 942, 448 N.Y.S.2d 582 (3d Dept.1982) (suit against faculty association); *Shapiro v. Sobel,* 85 A.D.2d 552, 452 N.Y.S.2d 841 (1st Dept. 1981) (suit against tenant association); *Crouch v. Publishers New Press, Inc.,* 207 Misc. 253, 137 N.Y.S.2d 867 (Sup.Ct. N.Y.Cty.1955) (suit against political organization). Given this breadth of application, it is clear that *Martin* still states New York's rule for the liability of unincorporated associations. Indeed, the Second Circuit Court of Appeals recently came to this same conclusion. *See Jund v. Town of Hempstead,* 941 F.2d 1271, 1281 (2d Cir. 1991).

Plaintiffs assert therefore that even if *Martin* controls the liability of unincorporated associations in general, the New York courts have recognized a "labor dispute" exception to the *Martin* rule. However, plaintiffs ignore the fact that New York courts have applied *Martin* to labor dispute cases. In *Giffords Oil Co. v. Boss,* 54 A.D.2d 555, 387 N.Y.S.2d 51 (2d Dept. 1976), an employer sued a union to recover for strike-related property damage. The Appellate Division dismissed the complaint for failure to meet the requirements set forth in *Martin.* In *Kirby v. Dubinsky,* 39 Misc.2d 1064, 242 N.Y.S.2d 543 (Sup.Ct. Westch.Cty.1963), a union president was sued in his representative capacity for trespass by a union member on plaintiffs' land, and destruction of some trees thereon. The complaint was dismissed for failure to allege the authorization or ratification of the illegal acts by every member of the union, citing *Martin.* *See also Collum Acoustical Co. v. Sheet Metal Workers Union,* 25 A.D.2d 613, 269 N.Y.S.2d 392 (4th Dept.1966); *Stefania v. McNiff,* 49 Misc.2d 480, 267 N.Y.S.2d 854 (Sup.Ct. Queens Cty.1966); *K.P.S. Restaurant Corp. v. Browne,* 22 Misc.2d 593, 194 N.Y.S.2d 761 (Sup.Ct.Nassau Cty.1959); *General Iron Corp. v. Livingston,* 12 Misc.2d 451, 171 N.Y.S.2d 975 (Sup.Ct. Kings Cty.1958); *Atlantic–Pacific Mfg. Corp. v. Quinnonez,* 10 Misc.2d 1019, 169 N.Y.S.2d 330 (Sup.Ct.Kings Cty.1957).

■ Plaintiffs point to the New York Supreme Court's reasoning in *Burns, Jackson, Miller, Summit & Spitzer v. Lindner,* 108 Misc.2d 458, 437 N.Y.S.2d 895 (Sup.Ct.1981), *modified,* 88 A.D.2d 50, 452 N.Y.S.2d 80 (2d Dept.1982), *aff'd,* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983), to show that New York has recently created a labor dispute exception to the *Martin* rule. Plaintiffs are correct that the trial court in *Burns, Jackson* held *Martin* inapplicable to a suit against a union for strike-related damages. *See* 437 N.Y.S.2d at 909. However, *Burns, Jackson* was appealed through the New York courts, and neither the Appellate Division nor the Court of Appeals addressed the applicability of *Martin* to the case. While the Court of Appeals ultimately dismissed the complaint against the union, it did so on grounds not connected with *Martin,* thereby neither reaffirming the applicability of *Martin* to this context nor carving out the labor dispute exception that plaintiffs seek. Since the higher New York courts chose to ignore the issue raised by the trial court,

the precedential value of *Martin* in this context remains undisturbed.

Finally, plaintiffs argue that *Martin* is inapposite to this case, asserting that section 807 of New York's Labor Law, N.Y. Lab. Law § 807(6) (McKinney 1988), provides the governing standard, not section 13 of the General Associations Law. Section 807 is entitled "Injunctions issued in labor disputes," and, not surprisingly, has been construed as governing injunctions, not damage actions. *See, e.g., International Bureau for Protection and Investigation, Ltd. v. Public Serv. Employees Union*, 98 Misc.2d 409, 413 N.Y.S.2d 962, 966 (Sup.Ct.N.Y.Cty.1979) (collecting cases). Plaintiffs, however, rely on the admittedly ambiguous language in section 807(6), stating that no union officer, etc., "shall be held responsible or liable in any civil action at law or suit in equity ..." for the proposition that this section governs damage actions as well as claims for injunctive relief.

However, only one case appears to have applied section 807 to a damages suit against a union. *See Lubliner v. Reinlib*, 184 Misc. 472, 50 N.Y.S.2d 786 (Sup.Ct. N.Y.Cty.1944). *Lubliner* involved a defamation action between unions, very similar to the facts of *Martin*.[2] Since *Lubliner* pre-dates *Martin* by seven years, however, it can no longer be considered an accurate statement of New York law. The other cases cited by plaintiff are similarly distinguishable: In *Weisberger v. Condon*, 6 Misc.2d 176, 161 N.Y.S.2d 448 (Sup.Ct. N.Y.Cty.1957), the court applied section 807(6) to union officers in a suit for libel. The union officers were sued in their individual capacities, however, not as representatives of the union. Hence the liability of the union as an unincorporated association was not presented to the court. Further, in applying section 807 to a damage action, the *Weisberger* court relied on *Lubliner*, whose validity was already questionable, as discussed above. In *Nathan's Famous, Inc. v. Local 1115, Joint Bd., AFL–CIO*, 70 Misc.2d 257, 332 N.Y.S.2d

513 (Sup.Ct.Kings Cty.1972), the court applied section 807 in issuing an injunction to prevent further violent picketing. Since section 807 governs the issuance of injunctions in labor disputes, it was properly applied in this case. No claim of damages was made in *Nathan's Famous*, and section 807 was not applied to such a claim. Thus, the New York courts have not applied section 807 to claims against unions for damages arising out of labor disputes, but instead have applied the *Martin* rule, as discussed above.

Thus *Martin* states the law of New York on this issue, and this court must follow it. Since the amended complaint does not allege that "every single member" of the defendant unions authorized or ratified the violent acts it complains of, the state law causes of action in the amended complaint, counts two through seven inclusive, are hereby dismissed.

■ Dismissal of the state law counts leaves only the federal count, under section 303 of the Labor–Management Relations Act, in the amended complaint. Defendants note that, once the state law causes of action are dismissed, both Mazur and Byer are no longer proper defendants in this action, since section 303 of Labor Management Relations Act creates no individual liability. 29 U.S.C. § 187. *See Prater v. United Mine Workers*, 793 F.2d 1201, 1206–07 (11th Cir.1986); *Iodice v. Calabrese*, 345 F.Supp. 248, 270 (S.D.N.Y. 1972), *aff'd in part, rev'd in part*, 512 F.2d 383 (2d Cir.1975). Plaintiffs do not contest this claim, and both Mazur and Byer are accordingly dismissed as defendants in this action.

■ Defendants also move to dismiss Moses as a plaintiff, challenging her standing to sue under section 303. Whether Moses has standing depends on whether she was simply an employee of R.M. Perlman, *see Prater, supra*, 793 F.2d at 1204–06, or whether she is an owner and "alter ego" of R.M. Perlman. *See Abreen Corp.*

**2.** *Lubliner*, as well as several other cases discussed in the text, actually applied section 876–a of the Civil Practice Act, the predecessor to section 807 of the New York Labor Law, which became effective in 1963.

*v. Laborers' Int'l Union,* 709 F.2d 748, 753–54 (1st Cir.1983). No evidence is before the court on this issue, and the court accordingly declines to dismiss Moses as a plaintiff in this action.

### III. *Conclusion*

Defendants' motions to dismiss counts two through seven of the amended complaint and to dismiss Byer and Mazur as defendants in this action are hereby granted. Defendants' motion to dismiss Moses as a plaintiff is denied. Plaintiffs are granted leave to replead in accordance with the requirements of *Martin v. Curran* within thirty days of the filing of this opinion.

IT IS SO ORDERED.