Yvonne MODESTE, Arthur Modeste, Ernestine Bowens and William Bowens, Plaintiffs,

v.

LOCAL 1199, DRUG, HOSPITAL AND HEALTH CARE EMPLOYEES UNION, RWDSU, AFL–CIO, Estelle Vazquez, Thomas Dawes, Rosa Cruz, Carmen Nieves and Nilda Nieves, Defendants.

No. 90 CIV 4159(SS).

United States District Court, S.D. New York.

Feb. 2, 1994.

**1158**

Donald D. Casale, Flomenhaft, Karam & Casale, New York City, for plaintiffs.

Elizabeth Werby, Levy, Pollack & Ratner, P.C., New York City, for defendants.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

Plaintiffs bring this action pursuant to § 6 of the Norris–LaGuardia Act, ch. 90, 47 Stat. 70 (1932), as amended, 29 U.S.C. § 106 (1992), for injuries inflicted upon them by union members during a lawful strike by Local 1199, Drug, Hospital and Health Care Employees Union, RWDSU, AFL–CIO, ("Local 1199" or the "Union"). Defendants move to dismiss the second, fifth and seventh causes of action of the complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Defendants also move to remand the remaining pendant state law claims to state court.

■ The issue before me is whether a labor union is liable for the unlawful acts of its members, officers or agents under § 6 of the Norris–LaGuardia Act, absent a showing that the unlawful acts were authorized or ratified by *each member* of the union as required by the holding of the New York Court of Appeals in *Martin v. Curran*, 303 N.Y. 276, 101 N.E.2d 683 (1951). I answer this question in the negative and, for the reasons discussed below, hold that § 6 of the Norris–LaGuardia Act does not preempt *Martin*'s requirement that a plaintiff plead and establish the liability of each union member before a union can be held liable for the unlawful acts of its members in a federal court adjudication of pendent state law claims. Defendants' motion to dismiss the second, fifth and seventh causes of action of the complaint is therefore **GRANTED.** Under 28 U.S.C. § 1367(c)(3) (1992), I remand the remaining state law causes of action to state court for final adjudication.

## BACKGROUND

For purposes of defendants' motion to dismiss, the relevant facts—which I interpret in the light most favorable to plaintiffs—are not in dispute.

During the summer of 1989, Local 1199 called for a strike of its members against Mount Sinai and other hospitals organized by the Union. At different times during the

strike, plaintiffs Yvonne Modeste ("Modeste") and Ernestine Bowens ("Bowens")—both members of Local 1199—were physically attacked and verbally abused by other members of Local 1199, some of whom are named in this action as individual defendants. According to plaintiffs, these attacks were the result of a harassment campaign instituted by striking members against dissenters who chose not to strike and attempted to go back to work.

The complaint sets forth eleven (11) causes of action. Two (2) causes of action arise under Title I of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411 (1992). The remaining nine (9) causes of action are pendent state law claims. By Stipulation and Order dated September 3, 1993, the parties agreed to dismiss with prejudice the first, third, fourth, sixth, ninth, tenth and eleventh causes of action, including the two causes of action that conferred subject matter jurisdiction in this Court when defendants removed the case from state court.

Defendants now move to dismiss plaintiffs' second, fifth and seventh causes of action against the Union, Local 1199. The second cause of action is a state tort claim for the assault upon Modeste; the fifth cause of action is Arthur Modeste's state law derivative claim for loss of society and services arising from the injuries to his wife; and the seventh cause of action relates to the state law claims for the assault upon Bowens.[1]

Defendants in this motion maintain that *Martin* requires dismissal of these three state law tort claims against the Union and its officers. In *Martin*, the New York Court of Appeals held that the officers of the National Maritime Union, an unincorporated association, were not liable for the unlawful acts of some of the union members because plaintiffs failed to plead and were unable to establish "that the *individual members* of the union authorized or ratified the tort complained of." *Id.*, 303 N.Y. at 280, 101 N.E.2d 683 (emphasis supplied). The Court stated:

> A voluntary, unincorporated membership association is neither a partnership nor a corporation. It is not an artificial person, and has no existence independent of its members. A part of the members of a voluntary organization cannot bind the other without their consent before the act which it is claimed binds them is done, or they, with full knowledge of the facts, ratify and adopt it.

*Id.*, 303 N.Y. at 282, 101 N.E.2d 683 (emphasis supplied).

The Court of Appeals in *Martin* recognized that N.Y. Gen. Ass'n Law § 13 (McKinney 1993), permits suits to be brought against an unincorporated association (such as a labor union) in its representative capacity.[2] It explained, however, that § 13 was not meant to effect a substantive change in the law of associational liability but rather only to simplify service of process by eliminating the need to join every member of the union in an action. Thus, *Martin* interpreted § 13 as a mere procedural tool and not a substantive amendment affecting New York's law of associational liability.

Plaintiffs argue that § 6 of the Norris-LaGuardia Act creates a substantive federal right to sue unions for the acts of their members in federal court and that § 6 preempts New York's *Martin* rule by setting forth the substantive law necessary to determine a labor union's liability for state law torts committed by its members. Plaintiffs also contend that *Martin* is contrary to the federal common law recognized by *United Mine Workers v. Coronado*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922), that unincor-

---

1. Plaintiff William Bowens' derivative claim against the Union has been dismissed by agreement among the parties and therefore, is not a part of the motion before the Court.

2. Section 13 states, in relevant part, that:
   An action or special proceeding may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, *against all the associates*, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally. Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section.
   N.Y.Gen.Ass'n Law § 13 (emphasis supplied).

porated associations could be held liable for the actions of their members. Finally, plaintiffs warn that application of the *Martin* rule will result in the "evisceration of federal protection afforded to victims of [labor related] violence."

Defendants counter that the *Martin* rule is consistent with and is not preempted by § 6 of the Norris–LaGuardia Act. Defendants maintain that § 6 provides only a standard of proof for union liability while the law of the state in which the district court sits determines whether the union has capacity to sue or be sued for the actions of its members. Defendants urge this Court to hold that under the *Martin* rule in New York, plaintiff may not sue Local 1199 in federal court in its representative capacity for the violations of state law by four of its members unless all of its members authorized or ratified the actions taken by the individual members.

Plaintiffs agree that if I remanded all of the pendent state law claims to state court, the *Martin* rule would invalidate their claims against the Union as pled in their second, fifth and seventh causes of action because they can not plead or prove that every member of the Union authorized or ratified the acts of the individual members. Plaintiffs argue, however, that § 6 creates a federal substantive right which confers not only subject matter jurisdiction in this Court precluding remand of this action to state court but also creates a federal substantive right on the question of agency liability precluding dismissal of their three causes of action against the Union for the state law torts of its members because they have plead union liability consistently with § 6.

The parties' arguments raise complex federal common law and preemption issues. A careful review of the applicable case law and the legislative history of § 6 leads me to conclude, however, that in enacting § 6, Congress did not intend to create a substantive right conferring subject matter jurisdiction in federal courts or to preempt state tort law and that plaintiffs' ability to sue Local 1199 in its representative capacity for the state tort acts of its members is controlled by *Martin.*

## DISCUSSION

### I. *The Standards for Preemption*

■ My inquiry begins, as it must, with an analysis of the preemptive effect, if any, of § 6 of the Norris–LaGuardia Act on the State of New York's common law of torts. The touchstone of federal preemption analysis is the intent of Congress in "enacting the federal statute at issue." *Cable Television Ass'n v. Finneran,* 954 F.2d 91, 95 (2d Cir. 1992) (*quoting Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2898, 77 L.Ed.2d 490 (1983)); *Medical Society of New York v. Cuomo,* 976 F.2d 812, 816 (2d Cir. 1992) ("In considering a preemption claim, our 'sole task' is to determine the intent of Congress.") (citations omitted).

Federal preemption claims are typically presented in one of three variants: (1) the federal statute expressly states a congressional intention to occupy the field, *see, e.g., Atlantic Healthcare Benefits Trust v. Googins,* 2 F.3d 1 (2d Cir.1993) (ERISA's explicit preemption clause); (2) the federal statute so comprehensively regulates the field that it is logical to infer that Congress intended to exclude "supplemental" state regulation, *see, e.g., Medical Society,* 976 F.2d at 817 (*citing Hillsborough County v. Automated Medical Lab. Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985)); or (3) the state law "stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987) (*quoting Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

In the case at bar, neither party argues, nor could they, that § 6 explicitly and by affirmative statutory mandate preempts state tort law. Rather, plaintiffs maintain that § 6 so completely occupies the field of union liability that state law is preempted by implication and stands as an obstacle to accomplishing Congress's purpose in enacting § 6.

■ Where, as here, an express preemption clause is absent, "persuasive indicia" may suffice to imply a congressional intention to occupy a field. *Cable Television*

*Ass'n,* 954 F.2d at 95 (*citing Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)); *see also Medical Society,* 976 F.2d at 817 (implied preemption). Thus, a federal statute will preempt state law if its shown to be "sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation." *Hillsborough County Fla. v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 719, 105 S.Ct. 2371, 2385, 85 L.Ed.2d 714 (1985) (*quoting Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

■■■ Alternatively, where persuasive indicia is lacking, "the state rule will only fall if it actually conflicts with the federal law." *Cable Television Ass'n,* 954 F.2d at 95. Conflict preemption takes place when state law "obstructs [or interferes with] the delicately crafted federal regime...." *Medical Society,* 976 F.2d at 820.

■■■ I am mindful that I should indulge a strong presumption against preemption in cases, such as this one, where traditional areas of state law are involved. *Medical Society,* 976 F.2d at 816. This assumption stems from "the cognate presumption that Congress does not normally intend to displace state law," particularly in areas traditionally regulated by the states. *Id.* (*citing Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981)). Thus, a plaintiff must present "compelling evidence of an intention to preempt" before a federal statute preempts traditional areas of state law. *Medical Society,* 976 F.2d at 816 (and cases cited therein). Thus, for example, "clear and manifest preemptive purpose" is required before a federal law can supersede "the historic police power of the states."

*Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.,* 485 U.S. 495, 500, 108 S.Ct. 1350, 1353, 99 L.Ed.2d 582 (1988).

■■■ I am also mindful that the deference given to states in the area of tort law is comparable to the deference traditionally afforded to the states with respect to their police power. As described by the Supreme Court:

> [W]e have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction.

*United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 721, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218 (1966) (citations omitted).

With these principles in mind, I turn to an examination of the history and legislative intent behind the enactment of § 6 of the Norris–LaGuardia Act to determine whether Congress intended to create a federal substantive right and to occupy the field in agency law in enacting § 6.

## II. *The Norris–LaGuardia Act*

"The underlying aim of the Norris–LaGuardia Act was to restore the broad purpose which Congress thought it had formulated in the Clayton Act which was frustrated, so Congress believed, by unduly restrictive judicial construction." *United States v. Hutcheson,* 312 U.S. 219, 235–36, 61 S.Ct. 463, 468, 85 L.Ed. 788 (1941).[3] Its purpose

---

**3.** Prior to the passage of the Norris–LaGuardia Act, the Clayton Act, ch. 323, 38 Stat. 738 (1914), as amended, 29 U.S.C. § 52 (1992), prohibited the issuance of restraining orders or injunctions by any court of the United States:

> in any case between an employer and employees, or between employers and employees, or between employees, ... involving, or growing out of, a dispute concerning the terms or conditions of employment, unless necessary to prevent irreparable injury to property, or to a property right, of the party making the application, for which injury there is no adequate

remedy at law, and such property or property right must be described with particularity in the application, which must be in writing and sworn to by the applicant or by his agent or attorney.

29 U.S.C. § 52 (1992).

An openly hostile judiciary, however, restrictively interpreted the Clayton Act, and upheld the issuance of an injunction barring unions from secondary boycotts and held that secondary boycotts constituted a conspiracy in restraint of trade in violation of § 1 of the Sherman Act, ch. 647, 26 Stat. 209 (1890), as amended, 15 U.S.C. § 1

was to guarantee the right to unionize, to bargain collectively for better terms and conditions of employment and the right to strike:

> [I]t is necessary that [the individual unorganized worker have the right to] full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; ....

29 U.S.C. § 102.

The Norris–LaGuardia Act achieved protection of these rights by divesting federal courts of the equitable power to issue injunctions or temporary restraining orders except in those situations specifically enumerated in § 4 of the Act. *See* 29 U.S.C. § 104 (1992); *United Bhd. of Carpenters & Joiners of Am. v. United States Bay Counties Dist. Council of Carpenters of United Bhd. of Carpenters & Joiners of Am.,* 330 U.S. 395, 401, 67 S.Ct. 775, 779, 91 L.Ed. 973 (1947) (The Norris–LaGuardia Act places a "limitation upon the jurisdiction and authority of courts of the United States in labor disputes"); *see also Burlington N. R.R. v. Bhd. of Maintenance of Way Employees,* 481 U.S. 429, 434, 107 S.Ct. 1841, 1845, 95 L.Ed.2d 381 (1987) ("In the Norris–LaGuardia Act, Congress divested federal courts of the power to enjoin secondary picketing in railway labor disputes.").

(1992). *See Duplex Printing Press Co. v. Deering,* 254 U.S. 443, 41 S.Ct. 172 [65 L.Ed. 349] (1921). Congress enacted the Norris–LaGuardia Act to correct the Supreme Court's narrow interpretation of the Clayton Act's prohibition on injunctions.
*Hutcheson,* 312 U.S. at 235–36, 61 S.Ct. at 468.

4. Section 113(d) of the Norris–LaGuardia Act defines "court of the United States" as used in § 6 as follows: "The term 'court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by act of Congress, including the courts of the District of Columbia."

Section 6 of the Norris–LaGuardia Act states:

**Responsibility of officers and members of association or their organizations for unlawful acts of individual officers, members, and agents**

No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.

29 U.S.C. § 106 (1992) (emphasis in original) (hereinafter § 6).

■■■■■ Congress enacted § 6 to limit the vicarious liability of labor unions and their officers in federal actions[4] to those instances where plaintiffs show by clear evidence that the union or union officials authorized or ratified the unlawful acts of union members or agents. Analysis of the case law predating § 6 and the legislative history of § 6 reveals, however, that Congress did not intend § 6 to preempt by implication the field of state substantive law on associational liability.

### (1) Case Law Predating § 6

Section 6 represents the outcome of the intermittent but often heated debate regarding the applicability of common law agency, tort and conspiracy principles to labor union disputes in the first half of this century. The debate centered on the standard of proof applicable to union liability for the unlawful actions of its members.

Thus, § 6 by its express terms is not intended to effect state court actions. *Cf. Schnabel Assoc. v. Building & Const.,* 338 Pa.Super. 376, 392, 487 A.2d 1327, 1335 (1985) ("anti-injunction provisions of the Norris–LaGuardia Act apply only to federal courts and not to state courts."); *Boda v. United States,* 698 F.2d 1174, 1175 (11th Cir. 1983) ("Court of the United States" as defined by 28 U.S.C. § 451 does not include a state court); *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 351 (5th Cir.1981) ("42 U.S.C. § 1985 applies only to obstruction of Courts of the United States and does not include the various state courts.").

Common law regarded unincorporated associations as having no liability independent of the liability of each of its members. Under this view, labor unions could not be sued as independent legal entities unless they were sued "in the names of [their] members." *United Mine Workers of Am. v. Coronado Coal Co.*, 259 U.S. 344, 385, 42 S.Ct. 570, 575, 66 L.Ed. 975 (1922). Unions were therefore largely insulated from liability for the unlawful acts of their members.

At the federal level, this insulation was stripped by *Coronado* in 1922. In *Coronado*, coal company owners, desirous of ridding themselves of union workers belonging to the United Mine Workers ("UMW"), closed down operations and then sought to reopen the coal mines on a non-union or open-shop basis. The UMW went on strike and, in the process, destroyed company property.

The coal company owners brought an action under §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1992), for conspiracy in restraint of trade and attached the union's property to satisfy the damages caused by the strike. The district court found for the company owners and the Eighth Circuit affirmed.

In its appeal to the Supreme Court, the union argued that the district court had erred in holding that it was liable for the damages caused by its members absent a showing that the union had authorized or ratified its members' actions. Chief Justice Taft, for a unanimous court, rejected this argument. The Court took notice of the common law principle that unincorporated associations had no legal persona independent of its members and that any liability "had to be enforced against each member." *Coronado*, 259 U.S. at 386, 42 S.Ct. at 574. The Court, however, found this common law principle inapposite to the growing body of federal laws and regulations which recognized the independent legal nature of labor organizations and "the need of representation by one person of many, too numerous to sue or to be sued." *Coronado*, 259 U.S. at 391, 42 S.Ct. at 576. The Court concluded:

> In this state of federal legislation, we think that [labor unions] are suable for their acts, and that funds accumulated to be expended in conducting strikes are subject to execution in suits for torts committed by such unions in strikes.

*Id.*

In rejecting the common law notion that labor organizations lacked legal identity (or in today's terms "capacity") to sue or be sued absent proof of each individual member's liability, *Coronado* subjected unions to liability for the unlawful acts of members, officers or agents under principles of respondeat superior. No longer were labor unions protected for unlawful acts which they had not authorized or ratified.

Plaintiffs maintain that *Coronado* established that unincorporated associations such as labor unions are independent legal entities with capacity to sue or be sued in their representative capacity for federal causes of action *and* state causes of action regardless of state law to the contrary. They argue that nearly thirty years later, the New York Court of Appeals in *Martin* simply overlooked *Coronado*'s holding.[5]

Plaintiffs' position is simply incorrect. *Coronado* held that, as a matter of federal common law, labor unions had capacity to sue and be sued for federal claims under principles of respondeat superior. In so doing, *Coronado* subjected labor unions and their officers to almost unlimited liability for the unlawful acts of their members for violations of federal law. *Coronado* expressed no opinion whether labor unions or their officers had

---

5. The holding in *Martin* is still good law in New York. *See, e.g., Giffords Oil Co. v. Boss*, 54 A.D.2d 555, 387 N.Y.S.2d 51 (1976); *Collum Acoustical Co. v. Local 46, Sheet Metal Workers Union*, 25 A.D.2d 613, 269 N.Y.S.2d 392 (1966). Recently, another member of this Court has reaffirmed the continued validity of *Martin*. *See R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union, Local 89-22-1*, 789 F.Supp. 127 (S.D.N.Y.1992). *But see Jund v. Town of Hempstead*, 941 F.2d 1271, 1281 (2d Cir.1991). (The New York Court of Appeals in *Madden v. Atkins*, 4 N.Y.2d 283, 295–97, 174 N.Y.S.2d 633, 641–43, 151 N.E.2d 73, 78–80 (1958) has created an exception to the *Martin* rule at least in a situation involving the union's expulsion of union members and claims arising therefrom under contract and delegation of responsibility theories).

capacity to sue or be sued in federal court for the unlawful acts of their members for state law violations. Indeed, *Coronado* could not express an opinion whether unions had capacity to sue or be sued in federal court for state law violations because there were no state claims before the Court. It is only natural then that the New York Court of Appeals in *Martin* in 1951 did not address *Coronado*'s holding of 1922.

■ Section 6 addressed *Coronado*'s unrestricted view of labor union and officer liability by limiting union liability in federal courts to cases where plaintiffs establish by clear evidence that the union or its officers participated in, ratified or authorized the unlawful acts of its members. Section 6 leaves untouched the state's traditional power to determine a labor union's and officers' capacity to sue or be sued for state law violations. Where the state recognizes a labor union's capacity to sue or be sued and the case is filed in federal court, plaintiff is required to proffer clear evidence of the labor union's participation in, authorization or ratification of such acts before liability may be imposed. However, Congress did not intend and did not by enacting § 6 create a federal substantive right to bring state law tort claims against unions where state law does not recognize such a right.

My interpretation of the import of *Coronado* and my reading of its modification by § 6 is supported by the definition of capacity to sue or be sued provided by Rule 17(b) of the Federal Rules of Civil Procedure 17(b) states, in relevant part, that:

(b) CAPACITY TO SUE OR BE SUED. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases *capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except* (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name *for the purpose of enforcing*

*for or against it a substantive right existing under the Constitution or laws of the United States....*

28 U.S.C. § 17(b) (1992) (emphasis supplied).

■ By its plain language, Rule 17(b)(1) provides unincorporated associations with capacity to sue or be sued when seeking to enforce a federal statutory or constitutional right. *See Klinghoffer v. S.N.C. Achille-Lauro*, 937 F.2d 44, 53 (2d Cir.1991) (unincorporated association's capacity to sue or be sued is determined by state law *except* that federal law controls when the "complaint alleges violations of 'substantive right[s] existing under the laws or the Constitution of the United States'...."). By contrast, state law controls on the question of capacity to sue or be sued where plaintiff does not assert a claim arising under federal law. As explained in *Oyler v. National Guard Ass'n of United States*, 743 F.2d 545, 550 (7th Cir. 1984):

Federal Rule 17(b) provides that an unincorporated association has the capacity to be sued in its own name if such capacity is provided for under state law or if the action is based upon constitutional rights or the laws of the United States. Because the plaintiff has not sought relief under the laws of the United States or the Constitution (because his action sounds in state common law fraud), the 17(b)(1) exception is not applicable, and we must therefore determine whether the defendants ... have a right to sue or be sued under [state] law.

■ Accordingly, plaintiffs' contention that § 6 merely because of its terms preempts the field and invalidates state law on the issue of capacity to sue or be sued under state substantive law is without merit and New York State law determines a union's capacity to sue or be sued for state causes of action even in cases filed in federal court.

Plaintiff maintains, however, that there is persuasive indicia in the legislative history that in enacting § 6 Congress sought, by implication, to preempt the field of agency law as it involves the liability of unions. A

further review of § 6's legislative history contradicts this assertion.

### (2) The Legislative History of § 6

During its Congressional debate, opponents of § 6 argued that the proposed new section relieved labor organizations of "responsibility for acts of their agents in labor disputes," and changed the substantive law of agency. *United Bhd. of Carpenters*, 330 U.S. at 401–02, 67 S.Ct. at 778–79 (*citing* S.Rep. No. 1060, 71st Cong., 2d Sess., p. 4). Opponents viewed § 6 as running counter to the well-established rule that "[a] principal[ ] may be liable for the acts of his agent, even though he never knew or heard of them and actually forbade them, provided he [the agent] was acting within the general scope of his authority, in furtherance of the purpose of the association." *United Bhd. of Carpenters*, 330 U.S. at 405 n. 15, 67 S.Ct. at 780 n. 15 (*citing Lawlor v. Loewe*, 235 U.S. 522, 534–535, 35 S.Ct. 170, 171–172, 59 L.Ed. 341 (1915)).

By contrast, proponents of § 6 claimed that it merely "appl[ied] the law of agency to labor unions." *United Bhd. of Carpenters*, 330 U.S. at 401, 67 S.Ct. at 778 (*citing* Hearings, Subcommittee of the Committee on the Judiciary, U.S. Senate, 70th Cong., 2d Sess., on S.1482, Part 5, p. 759).

The rhetoric of the debate notwithstanding, both the House and the Senate Judiciary Committees agreed that § 6 did not affect the general law of agency. The House Committee explained that § 6 was necessary so that "the courts should know that Congress expects them not to hold officers or associations liable for the unlawful acts of a member without clear proof of actual participation in, or authorization of, any unlawful acts by the officer or the association." *See United Bhd. of Carpenters*, 330 U.S. at 401, 67 S.Ct. at 778 (*citing* H.Rep. No. 669, 72nd Cong., 1st Sess., p. 9). The Senate Committee was even more explicit in its rejection of the notion that § 6 represented a change in the substantive law of agency, interpreting § 6 as merely "a rule of evidence" and not "a new law of agency." *Id.*, (*citing* S.Rep. No. 163, 72d Cong., 1st Sess., p. 19). The Senate Committee adopted the position that § 6 did not exempt labor unions, their officers or their members from responsibility for the acts of officers, members or agents of the union; rather, the provision merely emphasized that no union could be held responsible for the acts of its members absent clear proof of participation or authorization or ratification of unlawful acts by members and agents. *Id.*, 330 U.S. at 402–03, 67 S.Ct. at 779–80 (*citing* S.Rep. No. 163, 72d Cong., 1st Sess., p. 19).

Despite Congressional statements to the contrary, however, § 6 did create a new standard of proof in federal cases involving a union's liability for the actions of its members. *See, e.g., Yellow Bus Lines, Inc. v. Local Union 639*, 883 F.2d 132, 136 (D.C.Cir. 1989) (Section 6 "was meant to change[ ] the substantive law of agency."). Section 6 did reject *Coronado*'s determination that labor unions and union officers were liable for the actions of their members and substituted in its stead a requirement that a labor union's liability be predicated on clear proof of the union's authorization, ratification of or participation in the unlawful acts of members. *Cf. Gibbs*, 383 U.S. at 736, 86 S.Ct. at 1144 (section 6 supplants "ordinary doctrines of agency" which would otherwise apply, with a clear and convincing standard of proof). Ultimately, the Supreme Court sidestepped the question whether § 6 effected a substantive or evidentiary change in agency law under state law. *United Bhd. of Carpenters*, 330 U.S. at 403, 67 S.Ct. at 780. ("We need not determine whether § 6 should be called a rule of evidence or one that changes the substantive law of agency.").

The legislative history is devoid, however, of any indicia, substantive or otherwise, that Congress intended to force states to grant unincorporated associations—such as labor unions under New York law—capacity to sue or be sued for state law claims. Not only is "persuasive indicia" of state law preemption lacking in § 6's legislative history, but by limiting the application of § 6 only to actions in federal court, *see* footnote 4 *supra*, there is ample indicia that Congress regarded § 6 as merely a federal evidentiary procedural standard that left state law tort principles untouched.

■■■■ Section 6 has never been interpreted to serve as a fountainhead of federal substantive law nor did it empower federal courts to federalize state tort actions in the name of national interest. In fact, the Norris–LaGuardia Act is merely an anti-injunction act, limiting a federal court's equity powers to issue injunctions but not preempting state law or mandating limits on the power of state law to define its police power. *See, e.g., Ford v. Boeger,* 362 F.2d 999 (8th Cir.1966), *cert. denied,* 386 U.S. 914, 87 S.Ct. 857, 17 L.Ed.2d 787 *reh'g denied,* 386 U.S. 978, 87 S.Ct. 1160, 18 L.Ed.2d 140 (1967); *Suffolk Const. Co. v. United Bhd. of Carpenters,* 736 F.Supp. 1179 (D.Mass.1990). Contrary to other federal labor legislation like § 301 of the Labor Management Relation Act, 29 U.S.C. § 185(a) (1992), which "not only grants jurisdiction over defined areas of labor law but also ... vest[s] in the courts the power to develop a common law of labor-management relations within that jurisdiction," *see Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 642, 101 S.Ct. 2061, 2068, 68 L.Ed.2d 500 (1981), § 6 merely sets forth a standard of proof to be utilized by federal courts.

■■■■ Section 6's "clear proof" requirement can best be understood as a substantive provision only to the extent that it sets forth a rule of evidence, or minimum burden of proof, necessary to find union liability. This reading of § 6's standard of proof requirement recognizes that while the modicum of proof necessary to establish liability is provided by § 6, the labor union's substantive tort liability is still determined by reference to state law.

■■■■ Plaintiffs maintain that this interpretation of § 6 stands as an obstacle to Congress' purpose in enacting § 6. Concededly, the *Martin* rule makes it very difficult for a plaintiff to maintain a cause of action against an unincorporated labor union in the State of New York. The fact that New York provides greater protection to labor unions, however, is of no consequence. It is well-established that the states may set higher standards of protection than those provided by federal law, particularly in areas additionally regulated by the states. *See,*

*e.g., Motor Vehicle Mfg. Ass'n of United States v. Abrams,* 899 F.2d 1315, 1319–20 (2d Cir.1990). As noted by the Second Circuit in *Jund v. Town of Hempstead:*

> Proof of authorization by every member ... would be a virtually impossible burden to meet and would certainly extinguish [plaintiff's] claim. A state rule, however, cannot be deemed inconsistent with federal law [merely] because it extinguishes the particular plaintiff's cause of action. It can be disregarded only if it is inconsistent with the policies underlying [the federal law]

941 F.2d 1271, 1281 (2d Cir.1991) (citations omitted).

The holding in *Jund,* not dispositive here, is in harmony with my interpretation of the interaction between the holding in *Martin* and § 6.

In *Jund,* a sanitation worker brought a § 1983 claim against the unincorporated Town of Hempstead alleging, *inter alia,* that he had been demoted for failure to make donations to the local Republican Committee. The district court granted plaintiff partial summary judgment on his § 1983 claim. The jury found for plaintiff on the remaining claims and the town appealed. *Jund,* 941 F.2d at 1273–77.

The Second Circuit affirmed the district court's grant of summary judgment for plaintiff on the issue of the town's liability under § 1983. *Id.,* 941 F.2d at 1281. The Second Circuit noted Supreme Court precedent recognizing that states may extinguish or curtail a plaintiff's cause of action but held that the principle announced in *Martin* did not apply where plaintiff asserted violations of § 1983 because application of *Martin* would effectively deprive plaintiff of a federal cause of action. *See id.,* (citing *Board of Regents v. Tomanio,* 446 U.S. 478, 488, 100 S.Ct. 1790, 1797, 64 L.Ed.2d 440 (1980)). The Court reasoned that application of the *Martin* rule would be inconsistent with § 1983's dual goals of deterrence and compensation and held that its application would trump both the federal action and leave

plaintiff without redress in state court.[6] Thus, foremost in the Court's consideration was the fact that failure to recognize a cause of action under § 1983 against the town would deprive plaintiff of any remedy.

The situation in this case is clearly distinguishable from *Jund*. As I have discussed above, the purpose of § 6 was not to create an enforceable federal right or to preempt state law but rather to limit *Coronado*'s unrestricted view of union liability. Equally dispositive, there is no question that plaintiffs were and have always enjoyed the freedom to assert their state law claims against the individual defendants. Dismissal of plaintiff's claims does not sound the death knell on their state claims but merely recognizes that plaintiffs enjoy no cause of action against the union which is not cognizable in state court. The anomaly here would be created if plaintiffs were granted greater state substantive rights because they sued in federal court instead of state court.

Plaintiffs, however, maintain that § 6 "has been repeatedly applied in setting both the substantive criteria for union liability in connection with state common law tort claims stemming from violence occurring during labor disputes as well as imposing the burden of proof relative to such criteria." In support of this proposition, plaintiffs rely primarily on the statement made in *Yellow Bus Lines, Inc. v. Local Union 639*, 883 F.2d 132, 136 (D.C.Cir.1989), that § 6 "was meant to change[] the substantive law of agency." This statement, although true, ignores that *Brotherhood of Carpenters* explicitly sidestepped the issue: "We need not determine whether § 6 should be called a rule of evidence or one that changes the substantive law of agency." *Bhd. of Carpenters*, 330 U.S. at 403, 67 S.Ct. at 780. Plaintiffs also ignore that *Yellow Bus* confronted only the issue of whether the evidence produced at trial satisfied the standard of proof required by § 6.

The court in *Yellow Bus* had no occasion to determine the effect of § 6 on state substantive law.

I also disagree with plaintiffs' further argument that application of the *Martin* rule to this case would "jettison the substantial substantive jurisprudence" generated by § 6. I read the cases cited in plaintiffs' brief only to mean that § 6's "clear proof" requirement preempts lower state law standards of proof but still requires the adoption of the states' substantive law of torts to determine if any liability exists at all. *See, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. at 736–37, 86 S.Ct. at 1144–45 (Tennessee law preempted to the extent that it requires a mere preponderance of the evidence); *Curreri v. International Bhd. of Teamsters, Chauffeurs*, 722 F.2d 6 (1st Cir.1983) (Section 6's higher standard of proof applies to claims against labor unions); *Charles D. Bonnano Linen Serv., Inc. v. McCarthy, Inc.*, 708 F.2d 1, 11–12 (1st Cir.1983) (Rhode Island's lower standard of proof preempted by § 6); *Federal Prescription Serv. v. Amalgamated Meat Cutters*, 527 F.2d 269, 275 (8th Cir.1975) (Section 6 applied to federal court adjudications of state tort claims arising out of labor disputes); *Kerry Coal Co. v. United Mine Workers of Am.*, 637 F.2d 957, 964 (3rd Cir. 1981) (Pennsylvania's preponderance of the evidence standard preempted by § 6 standard); *Ritchie v. United Mine Workers of Am.*, 410 F.2d 827, 837 (6th Cir.1969) (lower burden of proof preempted by § 6 "clear proof" requirement).[7]

To be sure, federal courts determining pendent state law claims have applied the clear proof requirement to Section 6 to state causes. *See, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. at 736–37, 86 S.Ct. at 1144–45. In so doing, however, federal courts have not discarded state law and set about federalizing state contract and tort

---

6. This is so because of New York's strict enforcement of the rule of employment at will.

7. Plaintiffs also cite *Coates v. Local 270, Int'l Bhd. of Teamsters*, 449 So.2d 662 (La.1984), for the proposition that § 6 sets forth the substantive criteria applicable to lawsuits against labor unions. Plaintiffs' reliance on *Coates* is misplaced. In *Coates*, the Louisiana Court of Appeals held

that a labor union was not liable under § 6 for the acts of its members absent a clear showing of participation in, or authorization or ratification of the acts by the union. *Coates* does not reveal, however, whether Louisiana, like New York, limits the capacity of unions to sue or be sued. Accordingly, its holding does not call for a contrary conclusion in this case.

causes of action. Rather, federal courts have enforced the federal burden of proof standard over state burden of proof standards only when the state standard prescribed a lower burden of proof.

*United Broth. of Carpenters v. U.S.*, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947), provides an excellent example of § 6's limited preemption of more permissive state standards of proof. In *Gibbs*, a coal mine superintendent sought compensation from the United Mine Workers ("UMW") labor union for violation of § 303 of the Labor Management Relations Act of 1947, ch. 120, 61 Stat. 158, as amended, 29 U.S.C. § 185 (1992), and for tortious conspiracy to interfere with his contract in violation of Tennessee law.

At trial, the jury found against the UMW on both claims. The trial judge set aside the jury's verdict on the § 303 claim but sustained the jury's award on the state claim. The Court of Appeals for the Sixth Circuit affirmed. Both parties appealed.

The Supreme Court upheld the district court's decision not to dismiss the pendent state claims even though the district court set aside and dismissed the jury's finding for the plaintiff on the federal claims. The Court reasoned that the district court had not abused its discretion in entertaining the state tort claims because of their substantial relation to the § 303 federal claims. *Gibbs,* 383 U.S. at 728, 86 S.Ct. at 1140.

The Supreme Court, however, reversed the district court's monetary award on the state law claim because the district court failed to instruct the jury on the "special proof requirements imposed by [§ 6 of the Norris–LaGuardia Act]." *Gibbs,* 383 U.S. at 735, 86 S.Ct. at 1143. In so doing, the Court recognized that § 6 functions as a supplementary "special proof requirement" applicable to "federal court adjudications of state tort claims arising out of labor disputes." *Id.,* 383 U.S. at 737, 86 S.Ct. at 1144.

However, *Gibbs* left untouched the district court's decision to instruct the jury according to Tennessee tort law rather than federal common law, implicitly accepting the primacy of state substantive law in federal court adjudication of state law claims arising out of a labor dispute. The *Martin* rule is therefore consistent with and complimentary to § 6 of the Norris–LaGuardia Act because *Martin* creates state law liability while § 6 only furnishes the standard of proof.

One final note bears repeated emphasis here. Unquestionably, New York's *Martin* rule imposes an onerous and almost insurmountable burden on individuals seeking to impose liability on labor unions. However, because plaintiffs have not established that the *Martin* rule is contrary to or obstructs the operation of § 6 of the Norris–LaGuardia Act, this Court is in no position to question the wisdom of the New York Court of Appeals in *Martin.* I wish to emphasize, however, that the holding I announce today affects only federal court adjudications of pendent state law claims, not federal court adjudication of federal claims. Because plaintiffs can not maintain their second, fifth and seventh causes of action against the Union under *Martin* and because I have determined that § 6 does not create a federal substantive right, I must dismiss these causes of action under the *Martin* rule.

### III. Supplemental Jurisdiction

■ The parties have stipulated to the dismissal of the two federal causes of action that provided defendants with the basis for removal of this case to federal court. The only remaining causes of action are pendent state claims. At my request, both parties have submitted letter briefs requesting that I remand this case to state court if I grant defendants' motion to dismiss. Because the complaint no longer sets forth a federal claim and because this case has had very limited pretrial proceedings, I will not exercise supplemental jurisdiction over the remaining pendent state claims and remand this case back to state court under 28 U.S.C. § 1367(c)(3) (1992). *Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991) (explaining that the factors of judicial economy, convenience, fairness and comity tilt towards remand when a federal court dismisses federal claims before trial).

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss the second, fifth and seventh causes of action against Local 1199 is **GRANTED.** The Clerk of the Court is instructed to **REMAND** the remaining causes of action to state court.

**SO ORDERED.**